UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| GERALYN HAWKINS, ET AL. | * | CIVIL ACTION NO. 19-13323 |
| | * | |
| VERSUS | * | SECTION: "E"(1) |
| | * | |
| SHELLY SANDERS, ET AL. | * | JUDGE SUSIE MORGAN |
| | * | |
| | * | MAGISTRATE JUDGE |
| | * | JANIS VAN MEERVELD |
| ************************************ | * | |

ORDER

Before the Court is the Motion to Disqualify Counsel filed by plaintiff Chad Lightfoot, seeking an order disqualifying the Louisiana Department of Justice, Office of the Attorney General ("Attorney General's Office") and Assistant Attorney General James G. Evans from representing defendants Franz Zibilich, Dawn Plaisance, and Jan Schmidt in this litigation. (Rec. Doc. 66). For the following reasons, the Motion to Disqualify is DENIED.

Background

Plaintiffs filed this action pursuant to 42 U.S.C. §1983, 1985, and 1986, alleging that the defendants have violated their constitutional rights and also alleging violations of Louisiana law. Plaintiffs' claims relate to the criminal prosecution of plaintiff Chad Lightfoot in Louisiana State Court. Among other things, plaintiffs allege that their financial records were improperly obtained via a subpoena and that Judge Franz Zibilich allowed the prosecutor to use the records without affording the plaintiffs due process or equal protection of the law. Lightfoot sought to recuse Judge Zibilich in his criminal proceeding, alleging that Judge Zibilich had stated in open court that should Lightfoot proceed to trial that he would severely punish Lightfoot. A hearing on the recusal motion was held before Judge Arthur Hunter, and Judge Zibilich testified that he had not threatened Lightfoot. Judge Hunter ordered that he be provided with the audio recordings and court reporters

1

Jan Schmidt and Dawn Plaisance were served with a subpoena for the recordings. According to plaintiffs, the court reporters were instructed by Judge Zibilich to disobey that subpoena and a subsequent subpoena for the same recordings. They allege that another subpoena was issued to Judge Zibilich for the recordings, but that Judge Zibilich summoned the Rules of the Court Committee, which concluded that the recordings were not required to be released and that the proper procedure was to secure the material by a formal transcript. Using transcripts, Judge Hunter denied the motion to recuse Judge Zibilich from Lightfoot's criminal case.

Plaintiffs are proceeding in this lawsuit pro se against Orleans Parish District Attorney Leon Cannizarro, Jr., Assistant District Attorney Andre C. Gaudin, the City of New Orleans, the Greater New Orleans Federal Credit Union and its employees Shelly Sanders and Heather Rodgers, an unknown insurance company, Zibilich, Schmidt, Plaisance, the Rules of the Court Committee of Orleans Parish Criminal Court, and Gary Kish. The Attorney General's Office appeared to represent defendants Zibilich, Schmidt, Plaisance, and the Rules of the Court Committee. The Attorney General's Office has filed a motion to dismiss on their behalf.

In the present motion, plaintiff Lightfoot seeks to have the Attorney General's Office disqualified from representing Zibilich, Schmidt, and Plaisance. He argues that his complaint implicates violations of criminal law by Zibilich, Schmidt, and Plaisance and that the Attorney General's Office's representation of these defendants creates a conflict of interest in violation of the Louisiana Constitution, the ABA Model Rules of Professional Conduct, and the public interest. He argues that the Attorney General's Office is prohibited from representing a defendant who is also accused of violating Louisiana criminal laws. He argues that there is an appearance of impropriety in the representation and that the public interest will be adversely affected. He submits that the Attorney General supervises all district attorneys of the state and that during Lightfoot's

criminal prosecution, he sent a letter to the Attorney General providing notice of the criminal proceeding against him and requesting the Attorney General intervene in the bad faith and prosecutorial misconduct by the Orleans Parish District Attorney's Office.

Zibilich, Schmidt, Plaisance oppose the motion. First, they argue that Lightfoot has no standing to disqualify the Attorney General's Office due to a conflict of interest because he is not a current or former client of the Attorney General's Office. They further argue that the Attorney General's Office does not have a conflict of interest. They point out that the Louisiana statute requires that the Attorney General represent state officials and state employees who are sued for tort damages and that the Attorney General has the sole responsibility to determine if an official or employee meets the threshold for defense. They add that this Court lacks jurisdiction to direct the Attorney General to perform his statutory duties. They point out that the Attorney General has only limited supervisory authority over the district attorneys and may only assist in criminal prosecutions upon the request of a district attorney. They say there is no evidence that the Attorney General is prosecuting Lightfoot in state court. They insist that under the Louisiana Code of Professional Conduct and the ABA Model Rules, the Attorney General has no conflict of interest.

## Law and Analysis

1. *Motion to Disqualify Counsel*

"Motions to disqualify are substantive motions affecting the rights of the parties and are determined by applying standards developed under federal law." In re Dresser Indus., Inc., 972 F.2d 540, 543 (5th Cir. 1992). In evaluating motions to disqualify, this court considers the Local Rules of this Court, which has adopted the "Rules of Professional Conduct of the Louisiana State

Bar Association;"[1] and the ABA's Model Rules of Professional Conduct.[2] See Acad. of Allergy & Asthma in Primary Care v. Louisiana Health Serv. & Indem. Co., 384 F. Supp. 3d 644, 652 (E.D. La. 2018). But "a court must take into account not only the various ethical precepts adopted by the profession but also the social interests at stake." F.D.I.C. v. U.S. Fire Ins. Co., 50 F.3d 1304, 1314 (5th Cir. 1995). Thus, courts should consider the right of a party to their counsel of choice and an attorney's right to freely practice her profession as well "whether a conflict has (1) the appearance of impropriety in general, or (2) a possibility that a specific impropriety will occur, and (3) the likelihood of public suspicion from the impropriety outweighs any social interests which will be served by the lawyer's continued participation in the case." Id. (quoting In re Dresser Indus., Inc., 972 F.2d 540, 544 (5th Cir. 1992)).

Of relevance here, where the plaintiff argues that the Attorney General's Office has a conflict of interest, Rule 1.7 of the Louisiana Rules of Professional Conduct provide:

> (a) Except as provided in paragraph (b), a lawyer shall not represent a client if the representation involves a concurrent conflict of interest. A concurrent conflict of interest exists if:
> (1) the representation of one client will be directly adverse to another client; or
> (2) there is a significant risk that the representation of one or more clients will be materially limited by the lawyer's responsibilities to another client, a former client or a third person or by a personal interest of the lawyer.

La. St. Bar Art. 16 R. Prof. Conduct Rule 1.7. Rule 1.7 of the ABA Model Rules of Professional Conduct is identical.

Rule 1.9 requires that:

---

[1] See L.R. 83.2.3. These rules are sometimes referred to as the Louisiana Rules of Professional Conduct.
[2] Some courts reference the ABA's Model Code of Professional Responsibility, but this document was replaced by the Model Rules of Professional Conduct in 1983. See https://www.americanbar.org/groups/professional_responsibility/publications/ (last accessed Nov. 4, 2020, at 3:51 p.m.) ("Before the adoption of the Model Rules, the ABA model was the 1969 Model Code of Professional Responsibility.").

4

> A lawyer who has formerly represented a client in a matter shall not thereafter represent another person in the same or a substantially related matter in which that person's interests are materially adverse to the interests of the former client unless the former client gives informed consent, confirmed in writing.

La. St. Bar Art. 16 R. Prof. Conduct Rule 1.9(a). This rule also prohibits a lawyer from knowingly representing:

> a person in the same or a substantially related matter in which a firm with which the lawyer formerly was associated had previously represented a client (1) whose interests are materially adverse to that person; and
> (2) about whom the lawyer had acquired information protected by Rules 1.6 and 1.9(c) that is material to the matter; unless the former client gives informed consent, confirmed in writing.

Id. Rule 1.9(b). Again, Rule 1.9 of the ABA's Model Rule of Professional Conduct is identical.

"As a general rule, courts do not disqualify an attorney on the grounds of conflict of interest unless the former client moves for disqualification." In re Yarn Processing Patent Validity Litig., 530 F.2d 83, 88 (5th Cir. 1976); Areizaga v. ADW Corp., No. 3:14-CV-2899-P, 2015 WL 13567554, at *4 (N.D. Tex. May 19, 2015) ("The general rule is that non-clients have no standing to bring a motion to disqualify the other side's counsel."). "The underlying rules relating to attorney conflicts of interest are designed to allay any apprehension a client may have in frank discussion of confidential information with his attorney." Yarn Processing, at 90. "To allow an unauthorized surrogate to champion the rights of the former client would allow that surrogate to use the conflict rules for his own purposes where a genuine conflict might not really exist." Id.

2. *Analysis*

Mr. Lightfoot's conflict of interest argument appears to be based on two theories. First, he seems to argue that the Attorney General's Office has a conflict because plaintiffs have alleged that Zibilich, Plaisance, and Schmidt violated Louisiana criminal laws and that the Attorney General will be responsible for prosecuting them for those crimes. At best though, this is an

5

argument concerning a future conflict that may come into existence if the Attorney General pursues criminal charges against Zibilich, Plaisance, and Schmidt. Even then, such a conflict would affect Zibilich, Plaisance, and Schmidt to the extent the Attorney General's Office had obtained information in its representation of them that it might use against them a criminal prosecution. It would be Zibilich, Plaisance, and Schmidt who had standing to challenge such a future conflict, not Lightfoot. See Yarn Processing, 530 F.2d at 88.

Further, it should be noted that the Attorney General is not responsible for prosecuting violations of criminal law alleged by the plaintiffs here.[3] As explained by the Middle District of Louisiana:

> Unlike the district attorneys, [the Louisiana Attorney General] does not have original jurisdiction to prosecute criminal cases. He may assist in a criminal prosecution "upon written request of a district attorney." La. Const. Art. 4, § 8. Alternatively, he may institute, prosecute or intervene in a criminal case "for cause, when authorized by the court" having original jurisdiction. Id. Consequently, any involvement the Attorney General might have in prosecuting cases . . . is indirect and remote.

Entm't Software Ass'n v. Foti, 451 F. Supp. 2d 823, 827 (M.D. La. 2006). The court can find no disqualifying conflict resulting from the fact that the plaintiffs have alleged violations of criminal law and the Attorney General might at some future time be called in to assist such prosecution by the district attorneys or might seek court authority to intervene in a prosecution initiated by the district attorneys.

---

[3] Lightfoot asserts that he notified the Attorney General in writing that he believed the Orleans Parish District Attorney was engaged in prosecutorial misconduct. To the extent Lightfoot cites this notice as evidence that the Attorney General became involved in the prosecution of Lightfoot, there is no evidence to suggest that the Attorney General did so. To the extent he cites this notice as evidence that the Attorney General should already have instituted criminal proceedings against the defendants, that issue is not before the court at this time. In any event, there appears to be no dispute that the Attorney General is not currently involved in any prosecution of Zibilich, Schmidt, and Plaisance.

Plaintiff's second theory appears to be that there is an appearance of impropriety resulting from the Attorney General's Office representing state officials and employees accused of criminal conduct. But as the defendants point out, Louisiana law requires that

> The state shall defend and indemnify a covered individual against any claim, demand, suit, complaint, or petition seeking damages filed in any court over alleged negligence or other act by the individual, including any demand under any federal statute when the act that forms the basis of the cause of action took place while the individual was engaged in the performance of the duties of the individual's office, employment with the state, or engaged in the provision of services on behalf of the state or any of its departments pursuant to Paragraph (E)(2) of this Section.

La. Rev. Stat. § 13:5108.1(A). The statutory procedure requires that the attorney general determine "whether the covered individual was engaged in the performance of the duties of his office or employment with the state at the time the events that form the basis of the cause of action happened" and if so, "the attorney general shall provide a defense to the covered individual." Id. § 13:5108.1(B).

Here the Louisiana Attorney General has determined that defense of Zibilich, Schmidt, and Plaisance is appropriate under the statute. And clearly the claims asserted by the plaintiffs are covered by the statutory language which extends to claims for damages over alleged "negligence or other act of the individual" and explicitly includes "any demand under any federal statute" as long as the challenged actions took place in the individual's performance of his or her duties. Plaintiffs' complaint undoubtedly seeks damages for the actions of Zibilich, Schmidt, and Plaisance as criminal court judge and court reporters. The statute imposes no exception for a claim that may also implicate criminal statutes.

Because the Attorney General's Office's representation of Zibilich, Schmidt, and Plaisance is mandated by Louisiana statute, this court cannot find that the representation creates an appearance of impropriety or that the public interest is harmed by the representation. There is no

disqualifying conflict arising out of Lightfoot's theory that the Attorney General's Office cannot represent a state official or employee alleged to have violated Louisiana criminal law.

## Conclusion

For the foregoing reasons, the Court finds no basis for disqualifying the Attorney General's Office from representing Zibilich, Schmidt, and Plaisance in this litigation. Accordingly, plaintiff's Motion to Disqualify (Rec. Doc. 66) is DENIED.

New Orleans, Louisiana, this 10th day of November, 2020.

                                          Janis van Meerveld
                                  United States Magistrate Judge