## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| **GERALYN HAWKINS, ET AL.,**<br>    **Plaintiffs** | **CIVIL ACTION** |
| **VERSUS** | **NO.  19-13323** |
| **SHELLY SANDERS, ET AL.,**<br>    **Defendants** | **SECTION: "E" (1)** |

## ORDER AND REASONS

Before the Court is Defendants', Franz Zibilich, Dawn Plaisance, Jan Schmidt, and the Orleans Parish Criminal District Court Rules of Court Committee, Motion to Dismiss.[1] Plaintiffs oppose the motion.[2] Defendants have filed a reply.[3] With leave of the Court,[4] Plaintiffs have filed a supplemental opposition.[5] Having reviewed the pleadings and the case law, the Court rules as follows.

## I.    Background[6]

Plaintiffs Geralyn Hawkins, Nichole Thompson, and Chad Lightfoot (sometimes collectively referred to as "Plaintiffs") sue numerous Defendants, captioning their complaint as a "Civil Rights Complaint 42 U.S.C. Section 1983; 1985; and 1986." Plaintiffs' claims stem from a pending criminal proceeding against Lightfoot for perjury, RICO theft, and RICO identity fraud in Louisiana state criminal court.[7]  Lightfoot has a criminal and civil history in Louisiana federal and state courts dating back to 1996.[8]

---

[1] R. Doc. 63.
[2] R. Doc. 97.
[3] R. Doc. 104.
[4] R. Doc. 136.
[5] R. Doc. 137.
[6] The following allegations are based on the third amended complaint. R. Doc. 57.
[7] R. Doc. 57, ¶ 56.
[8] *See, e.g., United States v. Lightfoot*, Civ. A. No. 17-00274, 2018 WL 5269827 (W.D. La. Oct. 22, 2018) ("Lightfoot is charged in the Indictment [Doc. No. 1] with one count of Fraud Scheme in Connection with

Hawkins, Thompson, and Lightfoot obtained personal loans in 2010 from Defendant Greater New Orleans Federal Credit Union ("the Union").[9] To apply for the loans, Plaintiffs submitted personal and/or private information to the Union, such as their places of employment, social security numbers, and drivers' license information.[10] In 2012, the Union conducted an internal investigation of numerous loans when it became suspicious because many of the loan applicants had the same information, such as addresses or job information.[11] Plaintiffs' loans were among those investigated.[12] Defendants Shelly Sanders, Heather Rodgers, and Gerry Kish, employees of the Union, assisted with the investigation.[13] Ultimately, Louisiana authorities accused Plaintiffs of participating in an "auto loan shopping scam" and fraud against the Union, and Lightfoot was arrested on October 15, 2015 and later charged with one count of perjury, one count of RICO identity theft, and one count of fraud.[14]

Plaintiffs filed this lawsuit in October 2019.[15] Plaintiff Lightfoot alone sues Defendants former Orleans Parish Criminal District Court Judge Franz Zibilich; Dawn Plaisance and Jan Schmidt, two court reporters in Judge Zibilich's section of the court; and the Orleans Parish Criminal District Court Rules of Court Committee (collectively, "Defendants") for "deny[ing] the plaintiff of [sic] evidence necessary to determine if he is

---

Major Disaster or Emergency Benefits, in violation of 18 U.S.C. § 1040(a)(2)."), *affirmed*, 809 F. App'x. 246 (5th Cir. 2020); *Lightfoot v. Corrections Corp. of Am.*, 101 F.3d 699 (5th Cir. 1996), 1996 WL 661267, at *1 (barring Lightfoot from filing any civil lawsuit as a pauper within the jurisdiction of the Fifth Circuit).

[9] R. Doc. 57 ¶¶ 20-21, 23.

[10] *Id.* ¶¶ 22, 24.

[11] *Id.* ¶ 26.

[12] *Id.* ¶ 27-29.

[13] *Id.* ¶¶ 26-28.

[14] *Id.* ¶ 25, 32-33. In the third amended complaint, Plaintiffs allege that multiple grand juries were convened, multiple indictments issued against Lightfoot on various charges that were later dismissed when the later grand jury superseded those charges, and Lightfoot was arrested no fewer than four times. *Id.* at pp. 4-5. It appears that the three charges noted above are now the only charges pending as of the date of filing the third amended complaint.

[15] R. Doc. 1.

being afforded a fair trial to which he is entitled." This allegation stems from Lightfoot's state charges, in which Lightfoot requested Judge Zibilich recuse himself from his case.[16] This request was heard before another judge, Judge Hunter.[17] Judge Hunter issued several subpoenas for audio recordings of all proceedings in Lightfoot's case before Judge Zibilich, but each time Judge Zibilich allegedly instructed his court reporters not to comply with the subpoenas because the recordings were not public records.[18] Judge Zibilich allegedly submitted the question of whether the recordings were public record to the Orleans Parish Criminal District Court Rules of Court Committee (the "Rules Committee"), which opined:

> After considering the law and facts, it is the opinion of the Rules of the Court Committee, based on the showing made, that the audio recordings in question are not required to be released by the Court based on the law (see R.S. 44:4(45)). The proper procedural vehicle to secure these materials is by formal transcript request to the court reporter to produce a certified official transcript of the proceedings associated with this case subject to the normal rules of the court.[19]

An en banc meeting of the Orleans Parish Criminal District Court accepted this opinion.[20] After reviewing only the transcripts, because he was unable to obtain the audio recordings, Judge Hunter ruled that Judge Zibilich was not required to recuse himself.[21]

Plaintiff Lightfoot alleges that Defendants Zibilich, Plaisance, and Schmidt "conspired to deny Plaintiff Lightfoot of rights entitled to him through due process in a state law proceeding causing injury to his person or property."[22] Because this Court must

---

[16] R. Doc. 57 ¶¶ 62-63.
[17] *Id.* ¶ 64.
[18] *Id.* ¶¶ 72-78.
[19] *Id.* ¶ 79. As Judge Hunter noted, however, the Rules Committee cited the incorrect provision; the correct provision is La. Rev. Stat. § 44:4(47). *Louisiana v. Lightfoot*, No. 526-754, slip op. at 3 n.7 (La. Crim. Dist. Ct. Orleans Par. Dec. 20, 2019) (Hunter, J.), *provided in* R. Doc. 97-1, at pp. 12-15.
[20] R. Doc. 57 ¶ 81.
[21] *Id.* ¶ 83; *see also Lightfoot*, slip op. at 4.
[22] R. Doc. 57 ¶ 73.

"give *pro se* briefs a liberal construction," the Court construes this claim as one under 42 U.S.C. § 1983.[23] Plaintiff Lightfoot also alleges that Zibilich and the Rules Committee violated his Fifth and Fourteenth Amendment rights to due process as well as the "Ex Post Facto Laws of the United States . . . Constitution."[24] Because Plaintiff Lightfoot seeks damages, the Court construes these claims as arising under Section 1983. Plaintiff sues Zibilich, Plaisance, and Schmidt in their official and individual capacities.[25] Lightfoot also alleges Defendants violated Louisiana Code of Criminal Procedure article 673 and Article I, Section 23 of the Louisiana Constitution.[26]

Plaintiff Lightfoot seeks a declaratory judgment that Defendants Zibilich and the Rules Committee violated his First, Fourth, Fifth, Sixth, Eighth, and Fourteenth Amendment rights as well as the ex post facto clause of the United States Constitution for allegedly denying Lightfoot the audio recordings.[27] Lightfoot also asks for a preliminary injunction requiring Zibilich and the Rules Committee to turn over the audio recordings.[28]

All Plaintiffs, including Hawkins and Thompson, allege against all Defendants nebulous violations of their Eight Amendment rights.[29] All Plaintiffs seek damages from Defendants for all violations. [30] Finally, Plaintiffs ask this Court to charge Defendants Zibilich, Plaisance, and Schmidt with criminal violations of various Louisiana statutes under 42 U.S.C. § 1983.

Plaintiffs also sue former District Attorney Leon Cannizzaro, Jr. and Assistant District Attorney Andre Gaudin for allegedly fabricating evidence to support the criminal

---

[23] *Brown v. Sudduth*, 675 F.3d 472, 477 (5th Cir. 2012).
[24] R. Doc. 57 ¶ 89.
[25] *Id.* ¶¶ 9, 13-14.
[26] *Id.* at p. 1, ¶¶ 84, 113.
[27] *Id.* ¶¶ 84, 113.
[28] *Id.* ¶ 84.
[29] *Id.* ¶ 125.
[30] *Id.* ¶¶ 115-22.

allegations against Plaintiffs and for bad faith prosecution.[31] Plaintiffs also sue the Union, Sanders, Rodgers, and Kish for allegedly improperly turning their private bank records over to the Gaudin.

Defendants Zibilich, Plaisance, Schmidt, and the Rules Committee now move to dismiss Plaintiffs' claims against them under Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6).[32]

## II.      Legal Standard

### A.      Rule 12(b)(1)

Federal courts are courts of limited jurisdiction; without jurisdiction conferred by statute, they lack the power to adjudicate claims."[33] A motion to dismiss under Federal Rules of Civil Procedure 12(b)(1) challenges a federal court's subject-matter jurisdiction.[34] Under Rule 12(b)(1), "[a] case is properly dismissed for lack of subject matter jurisdiction when the court lacks the statutory or constitutional power to adjudicate the case."[35] "Lack of subject-matter jurisdiction may be found in the complaint alone, the complaint supplemented by the undisputed facts as evidenced in the record, or the complaint supplemented by the undisputed facts plus the court's resolution of the disputed facts."[36] "When, as here, grounds for dismissal may exist under both Rule 12(b)(1) and Rule

---

[31] R. Doc. 57 ¶¶ 32-44.

[32] R. Doc. 67. Defendant Plaisance also moved to dismiss Plaintiffs' claims against her under Federal Rules of Civil Procedure 12(b)(5) for insufficient service of process; however, Plaisance has since accepted service. R. Doc. 85.

[33] *In re FEMA Trailer Formaldehyde Products Liab. Litig. (Mississippi Plaintiffs)*, 668 F.3d 281, 286 (5th Cir. 2012).

[34] *See* Fed. R. Civ. P. 12(b)(1).

[35] *Home Builders Ass'n of Miss., Inc. v. City of Madison, Miss.*, 143 F.3d 1006, 1010 (5th Cir. 1998) (internal quotation marks and citation omitted).

[36] *In re FEMA*, 668 F.3d at 287.

12(b)(6), the Court should, if necessary, dismiss only under the former without reaching the question of failure to state a claim."[37]

### B.    Rule 12(b)(6)

Pursuant to Federal Rule of Civil Procedure 12(b)(6), a district court may dismiss a complaint, or any part of it, for failure to state a claim upon which relief may be granted if the plaintiff has not set forth factual allegations in support of his claim that would entitle him to relief.[38] "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"[39] "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."[40] The court, however, does not accept as true legal conclusions or mere conclusory statements, and "conclusory allegations or legal conclusions masquerading as factual conclusions will not suffice to prevent a motion to dismiss."[41] "[T]hreadbare recitals of elements of a cause of action, supported by mere conclusory statements" or "naked assertion[s] devoid of further factual enhancement" are not sufficient.[42]

In summary, "[f]actual allegations must be enough to raise a right to relief above the speculative level."[43] "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not

---

[37] *Valdery v. Louisiana Workforce Comm'n*, No. CIV.A. 15-01547, 2015 WL 5307390, at *1 (E.D. La. Sept. 10, 2015).

[38] *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007); *Cuvillier v. Taylor*, 503 F.3d 397, 401 (5th Cir. 2007).

[39] *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Twombly*, 550 U.S. at 570).

[40] *Id.*

[41] *S. Christian Leadership Conf. v. Sup. Ct. of the State of La.*, 252 F.3d 781, 786 (5th Cir. 2001) (citing *Fernandez-Montes v. Allied Pilots Ass'n*, 987 F.2d 278, 284 (5th Cir. 1993)).

[42] *Iqbal*, 556 U.S. at 663, 678 (citations omitted).

[43] *Twombly*, 550 U.S. at 555.

show[n]'—that the pleader is entitled to relief."[44] "Dismissal is appropriate when the complaint 'on its face show[s] a bar to relief.'"[45]

### III.   Legal Analysis

### A.   Claims Against "All Defendants" Are Dismissed Without Prejudice.

In numerous paragraphs of the third amended complaint, Plaintiffs allege that "all named Defendants," "all Defendants," or "named Defendants" violated their constitutional or statutory rights.[46] Mere "conclusory allegations against [d]efendants as a group" that "fail[ ] to allege the personal involvement of any defendant" are insufficient to put Defendants on notice of their alleged wrongdoing.[47] A plaintiff must allege facts that "establish each individual [d]efendant's liability for the misconduct alleged."[48] When a number of defendants are named in a complaint, a plaintiff cannot refer to all defendants "who occupied different positions and presumably had distinct roles in the alleged misconduct" without specifying "which defendants engaged in what wrongful conduct."[49] A complaint that contains "impermissibly vague group pleading" will be dismissed.[50]

Accordingly, the claims against "all named Defendants," "all Defendants," or "named Defendants," including Zibilich, Plaisance, Schmidt, and the Rules Committee,

---

[44] *Id.* (quoting Fed. R. Civ. P. 8(a)(2)).
[45] *Cutrer v. McMillan*, 308 F. App'x 819, 820 (5th Cir. 2009) (per curiam) (quotations omitted).
[46] *See, e.g,* R. Doc. 57, ¶¶ 18, 85-88, 90, 92, 95, 125.
[47] *Galicki v. New Jersey*, No. 14-169, 2015 WL 3970297, at *2 (D.N.J. June 29, 2015) (dismissing plaintiffs' claims without prejudice for failure to provide each defendant with notice of its alleged participation in the racketeering enterprise).
[48] *Id.; see also Ashcroft v. Iqbal*, 556 U.S. 662, 676 (2009) (finding that a plaintiff must plead that each Government-official defendant, through the official's own individual actions, has violated the Constitution); *Aruanno v. Main*, 467 F. App'x 134, 137-38 (3d Cir. 2012) (dismissal of § 1983 action was appropriate where Defendants were collectively sued as "[government] personnel" and failed to allege the personal involvement of the individual Defendants).
[49] *Falat v. County of Hunterdon*, No. 12-6804, 2013 WL 1163751, at *3 (D.N.J. Mar. 19, 2013).
[50] *Id.*

are dismissed without prejudice for impermissible group pleading and failing to specify how Zibilich, Plaisance, Schmidt, and the Rules Committee violated Plaintiffs' rights.[51] However, to the extent the Plaintiffs referenced any of these claims elsewhere in their third amended complaint against specific Defendants, these claims are addressed below.

### B.   Plaintiffs Lack Standing to Request Criminal Charges Against Defendants.

Plaintiffs request the Court invoke its "pendent/supervisory jurisdiction" under 42 U.S.C. § 1983 to charge Defendants Zibilich, Plaisance, and Schmidt with criminal violations of various Louisiana statutes.[52]  As the Court has stated before, this is beyond its authority and jurisdiction.[53] "Section 1983 and *Bivens* actions are available to seek damages and injunctive relief. They are not avenues for private citizens to bring criminal charges."[54] "[A] private citizen lacks a judicially cognizable interest in the prosecution or non-prosecution of another."[55] Because Plaintiffs lack standing to bring criminal charges against Defendants, these claims must be dismissed without prejudice for lack of standing.

### C.   The Federal Law Claims by Hawkins and Sanders Against Defendants Are Dismissed.

In their motion to dismiss and reply, Defendants argue that Plaintiffs Hawkins and Sanders have no standing to assert claims against Defendants because they have suffered no injury from any of the alleged misconduct in Lightfoot's prosecution; only Lightfoot has suffered an alleged injury to establish standing. Defendants also argue the Rules

---

[51] These claims are dismissed as to all Defendants in this lawsuit for the same reasons, notwithstanding that this Order and Reasons addresses only Ziblich, Plaisance, Schmidt, and the Rules Committee's motion to dismiss.

[52] R. Doc. 57, ¶¶ 96-111.

[53] R. Doc. 148.

[54] *Banks v. Gillie*, No. 03-3098, 2004 U.S. Dist. LEXIS 5413, at *20 (E.D. La. Feb. 25, 2004).

[55] *See Linda R.S. v. Richard D.*, 410 U.S. 614, 619 (1973).

Committee is not a juridical entity capable of being sued. They argue that Lightfoot's claims for injunctive and declaratory relief against Zibilich and the Rules Committee are moot because Judge Zibilich is no longer on the bench. Alternatively, they argue that the Court must abstain from deciding Lightfoot's claims for injunctive and declaratory relief against Defendants under the *Younger*[56] and *Rooker-Feldman*[57] doctrines. Finally, Defendants argue that any claims for damages against Plaisance and Schmidt in their official capacities are barred by the Eleventh Amendment and any claims against them in their individual capacities are barred by qualified immunity.

Plaintiffs argue in their opposition and supplemental opposition that Hawkins and Sanders have standing to bring claims because they have an interest in the outcome of Lightfoot's prosecution due to their relationship with him and Defendants' conduct has caused them mental, emotional, and financial suffering. They alternatively argue Hawkins and Sanders have third-party standing. Plaintiffs admit the Rules Committee is not an entity capable of being sued but argue they should be allowed to identify the correct entity through discovery. Plaintiffs argue the claims for injunctive and declaratory relief are not moot because they still dispute the legality of the Defendants' actions. They argue *Younger* abstention is not applicable because Lightfoot's prosecution is in bad faith and because the alleged misconduct by Defendants in this case is an exceptional circumstance that the Court must address. Plaintiffs argue the *Rooker-Feldman* doctrine is inapplicable because they do not seek Judge Zibilich's recusal. They admit that any claims for damages against Defendants in their official capacities are barred by the Eleventh Amendment. However, Plaintiffs maintain they have the right to request damages from Defendants in

---

[56] *Younger v. Harris*, 401 U.S. 37 (1971).
[57] *Rooker v. Fidelity Tr. Co.*, 263 U.S. 413 (1923); *D.C. Ct. of Appeals v. Feldman*, 460 U.S. 462 (1983).

their individual capacities. They argue Zibilich does not have absolute immunity for his actions because he lacked jurisdiction at that time since the motion to recuse had been transferred to Judge Hunter. Finally, Plaintiffs argue Plaisance and Schmidt are not entitled to qualified immunity because they violated rights guaranteed to Plaintiffs by the Louisiana Constitution and Louisiana statutes.

### 1.   Plaintiffs Hawkins and Sanders Lack Standing to Sue for Injuries Allegedly Sustained by Lightfoot.

Standing to sue is a doctrine rooted in the traditional understanding of a case or controversy.[58] The doctrine developed to ensure federal courts do not exceed their authority as it has been traditionally understood.[59] The doctrine limits the category of litigants empowered to maintain a lawsuit in federal court to seek redress for a legal wrong.[60]

The Supreme Court has established that the "irreducible constitutional minimum" of standing consists of three elements.[61] The plaintiff must have (1) suffered an injury in fact, (2) that is fairly traceable to the challenged conduct of the defendant, and (3) that is likely to be redressed by a favorable judicial decision.[62] Injury in fact is a constitutional requirement and cannot be erased.[63] To establish injury in fact, a plaintiff must show that he or she suffered "an invasion of a legally protected interest" that is "concrete and particularized" and "actual or imminent, not conjectural or hypothetical."[64] For an injury

---

[58] *Spokeo, Inc. v. Robins*, 578 U.S. 856 (2016).

[59] *See id.* at 820.

[60] *See Valley Forge Christian Coll. v. Americans United for Separation of Church & State, Inc.*, 454 U.S. 464, 473 (1982); *Warth v. Seldin*, 422 U.S. 490, 498-499 (1975).

[61] *Lujan v, Defenders of Wildlife*, 504 U.S. 555, 560 (1992).

[62] *Id.* at 560–561.

[63] *See Summers v. Earth Island Inst.*, 555 U.S. 488, 497 (2009); *Gladstone, Realtors v. Village of Bellwood*, 441 U.S. 91, 100 (1979) ("In no event . . . may Congress abrogate the Art. III minima").

[64] *Lujan*, 504 U.S. at 560 (internal quotation marks omitted).

to be "particularized," it "must affect the plaintiff in a personal and individual way."[65] A "concrete" injury must be "de facto"; that is, it must actually exist.[66] "Concrete" is not, however, necessarily synonymous with "tangible."[67]

"[E]ven when the plaintiff has alleged injury sufficient to meet the 'case or controversy' requirement, [the Supreme] Court has held that the plaintiff generally must assert his own legal rights and interests, and cannot rest his claim to relief on the legal rights or interests of third parties."[68] In other words, "injury alone is not sufficient to establish standing"; rather, a person can generally only pursue claims "to vindicat[e] that person's own rights."[69] For example, in *Danos v. Jones*, the secretary of a federal judge sued the Judicial Council of the United States for allegedly unconstitutionally suspending the judge from employing staff, which resulted in the secretary's termination of employment.[70] The secretary claimed she had standing because she "suffered an injury-in-fact by losing her job."[71] However, the Fifth Circuit held the "alleged rights at issue— . . . to employ a secretary under § 752—are rights of the judge, not of the secretary."[72] Accordingly, even though the secretary was injured, she "lack[ed] standing to pursue this constitutional claim, because she [could ]not assert the rights of [the judge]."[73]

Nevertheless, "there may be circumstances where it is necessary to grant a third party standing to assert the rights of another."[74] In order for a third party to have third-

---

[65] *Id.* at n.1.
[66] *Spokeo, Inc.*, 136 S. Ct. at 1548.
[67] *Id.* at 1549.
[68] *Warth v. Seldin*, 422 U.S. 490, 499 (1975); *see also Danos v. Jones*, 721 F. Supp. 2d 491, 498 (E.D. La. July 8, 2010) (citing *Kowalski v. Tesmer*, 543 U.S. 125, 129 (2004)) ("[P]rudential standing considerations generally limit a person to vindicating that person's own rights."), *aff'd*, 652 F.3d 577 (5th Cir. 2011).
[69] *Danos*, 721 F. Supp. 2d at 498.
[70] *Danos*, 625 F.3d at 580.
[71] *Danos*, 721 F. Supp. 2d at 498.
[72] *Danos*, 625 F.3d at 580.
[73] *Id.*
[74] *Kowalski*, 543 U.S. at 129-30.

party standing, the third party must "make two additional showings": 1) the third party must have a "'close' relationship with the person who possesses the right," and 2) there must be a "'hindrance' to the possessor's ability to protect his own interests."[75]

In this case, Plaintiffs' claims stem solely from Lightfoot's pending prosecution, namely his motion to recuse Judge Zibilich. Hawkins and Sanders have never been arrested or charged in connection with the case against Lightfoot.[76] Hawkins and Sanders do not assert that Defendants violated their own constitutional rights; rather, they rest their claims on alleged violations of Lightfoot's constitutional rights. Although they argue that Defendants' alleged misconduct against Lightfoot has caused them mental, emotional, and financial suffering, injury alone is not sufficient to assert the rights of others.[77] Like the plaintiff in *Danos*, Hawkins and Sanders have failed to assert a violation of their own rights.[78] Moreover, Hawkins and Sanders cannot assert third-party standing to bring Lightfoot's claims because there is no hindrance to his ability to protect his own interests. It is undisputed that Lightfoot is a party in this very litigation and is asserting his rights against Defendants.

For these reasons, Hawkins and Sanders lack standing to bring the asserted claims against Defendants. Accordingly, any claims by Hawkins and Sanders against Defendants must be dismissed without prejudice for lack of standing.

---

[75] *Id.* at 130 (citing *Powers v. Ohio*, 499 U.S. 400, 411 (1991)).

[76] R. Doc. 57, at p. 10.

[77] *Warth v. Seldin*, 422 U.S. at 499; *Danos*, 625 F.3d at 580; *Danos*, 721 F. Supp. 2d at 498.

[78] Hawkins and Sanders also point to their claims against the other Defendants in this case, Gaudin, Cannizzaro, the Union, Sanders, Rodgers, and Kish, to assert that they have an interest in Lightfoot's prosecution sufficient to establish standing against Zibilich, Plaisance, Schmidt, and the Rules Committee. However, the claims against the other Defendants relate to their use of Hawkins and Sanders's financial information in Lightfoot's prosecution, which in no way relate to their claims against Zibilich, Plaisance, Schmidt, and the Rules Committee for allegedly denying Lightfoot certain evidence in Zibilich's recusal hearing. Hawkins and Sanders cannot use their standing to sue some defendants as standing to sue others when they assert no personal cognizable interest against those other defendants.

### 2.   The Rules Committee is not an Entity Capable of Being Sued.

Under Louisiana law, "[a]n entity must qualify as a juridical person to have the capacity to be sued."[79] "A juridical person is an entity to which the law attributes personality, such as a corporation or a partnership."[80] The Louisiana Supreme Court has adopted a "functional approach" for determining whether a political subdivision is a separate and distinct juridical person.[81] In this case, numerous courts have recognized that Louisiana district courts are not juridical entities capable of being sued,[82] and nothing about the Rules Committee, an internal committee of judges organized by the Orleans Parish Criminal District Court, makes the outcome any different.[83] Lightfoot admits the Rules Committee is not a juridical entity: "The plaintiffs are in agreement with the defendants, Section 1983 DOES NOT permit the plaintiffs to take action against the Rules Committee named herein . . . in their [sic] official capacities [sic]."[84] Accordingly, an analysis of whether the Rules Committee is a juridical person is not necessary. For these reasons, Lightfoot's claims against the Rules Committee must be dismissed with prejudice.[85]

---

[79] *Dejoie v. Medley*, No. 41,333, at p. 4 (La. App. 2 Cir. 12/20/06); 945 So. 2d 968, 972.

[80] La. Civ. Code art. 24 (2021).

[81] *Roberts v. Sewerage & Water Bd. of New Orleans*, No. 92-2048 (La. 3/21/94); 634 So. 2d 341, 346-47.

[82] *See, e.g.*, *Griffith v. Louisiana*, 808 F. Supp. 2d 926 933-34 (E.D. La. 2011) (collecting cases); *Durden v. Bryson*, No. 5:17-cv-214, 2017 WL 4855437, at *2 (W.D. La. Sept. 26, 2017) (same).

[83] R. Doc. 57 at 15.

[84] R. Doc. 97, at p. 5.

[85] Plaintiffs ask the Court to permit discovery so that they can identify the members of the Rules Committee and add them to this case. However, discovery is currently stayed. R. Doc. 85. Federal Rule of Civil Procedure 15(a) provides the Court should grant leave to amend freely when justice so requires. Leave to amend is not "automatic," but the Court must possess a "substantial reason" to deny leave to amend. *Jones v. Robinson Prop. Grp., L.P.*, 427 F.3d 987, 994 (5th Cir.2005). A court possesses a "substantial reason" when, for instance, a plaintiff has acted with "undue delay, bad faith or dilatory motive" in seeking leave to amend, the plaintiff has made "repeated failures to cure deficiencies by amendments previously allowed," "undue prejudice [will result] to the opposing party by virtue of allowance of the amendment," or the amendment would be completely futile. *Id.* The Court finds any amendment in this case would be futile. For the reasons stated in this Order, Plaintiffs' claims against the Rules Committee fail, and adding the individual members as defendants would not change that. The Court also notes that most of the acts giving rise to Plaintiffs' complaint occurred between 2010 and 2014; a few acts occurred in 2018 and 2019.

**3.    Lightfoot's Claims for Damages Against Zibilich, Plaisance, and Schmidt in Their Official Capacities Are Barred by the Eleventh Amendment.**

"A foundational premise of the federal system is that States, as sovereigns, are immune from suits for damages, save as they elect to waive that defense."[86] "As an exception to this principle, Congress may abrogate the States' immunity from suit pursuant to its powers under § 5 of the Fourteenth Amendment."[87] "Congress has not expressly waived sovereign immunity for § 1983 suits."[88] "While Louisiana may have waived sovereign immunity with respect to some claims [in tort and contract], La. Const. art. 1 § 26 makes it clear the State has not waived its sovereignty within the federal system."[89] "Suits against state officials in their official capacity . . . should be treated as suits against the State."[90] For this reason, suits against Louisiana district judges in their official capacity have been found to be barred by the Eleventh Amendment.[91]

In this case, Lightfoot's claims for damages under Section 1983 against Zibilich, Plaisance, and Schmidt in their official capacities are treated as claims against the State

---

Plaintiffs filed their lawsuit in 2019. The Court will not now, in 2023, after Plaintiffs have already filed four complaints, give leave for Plaintiffs to file yet another amended complaint. Accordingly, to the extent Plaintiffs are requesting leave from the Court to file an amended complaint in order to add the individual members of the Rules Committee as defendants, that request is denied.

[86] *Coleman v. Ct. of Appeals of Md.*, 566 U.S. 30, 35 (2012).

[87] *Id.*

[88] *Richardson v. S. Univ.*, 118 F.3d 450, 453 (5th Cir. 1997) (first citing *Quern v. Jordan*, 440 U.S. 332, 340-45 (1979); and then citing *Voisin's Oyster House Inc. v. Guidry*, 799 F.2d 183, 186 (5th Cir. 1986)).

[89] *Holliday v. Bd. Of Supervisors of LSU Agric. & Mech. Coll.*, No. 2014-0585, at pp. 2-3 (La. 10/15/14); 149 So. 3d 227, 228-29.

[90] *Hafer v. Melo*, 502 U.S. 21, 25 (1991).

[91] *See, e.g.*, *Sampay v. Terrebonne Par. 32nd Jud. Ct.*, No. 22-1173, 2022 WL 2712873, at *5 (E.D. La. June 9, 2022), *report and recommendation adopted*, No. 22-1173, 2022 WL 2704573 (E.D. La. July 12, 2022); *see also Greathouse v. 32nd J.D.C. of Terrebonne Par.*, No. 22-1939, 2022 WL 2721349, at *2 (E.D. La. June 28, 2022) (finding a case brought against a Louisiana district court barred by the Eleventh Amendment), *report and recommendation adopted*, No. 22-1939, 2022 WL 2713411 (E.D. La. July 13, 2022); *Henderson v. 32nd Jud. Dist. Of Terrebonne Par.*, No. 18-7683, 2018 WL 6380793, at *2 n.5 (E.D. La. Nov. 2, 2018) (same), *report and recommendation adopted*, No. 18-7683, 2018 WL 6335773 (E.D. La. Dec. 5, 2018); *Jefferson v. La. State Sup. Ct.*, 46 Fed. App'x 732 (5th Cir. 2002), 2002 WL 1973897, at *1 (unpublished) (finding a suit against the Louisiana Supreme Court barred by the Eleventh Amendment); *S. Christian Leadership Conf. v. Sup. Ct. of State of La.*, 252 F.3d 781, 782 n.2 (5th Cir. 2001) (stating suits against state supreme courts are barred by the Eleventh Amdnment).

of Louisiana. Because Congress has not waived the states' sovereign immunity with respect to Section 1983 claims and because Louisiana has not waived its sovereign immunity either, Lightfoot's claims for damages against Zibilich, Plaisance, and Schmidt in their official capacities are barred by the Eleventh Amendment. Accordingly, Lightfoot's claims for damages under Section 1983 against Zibilich, Plaisance, and Schmidt in their official capacities must be dismissed without prejudice.

### 4.   Lightfoot's Claims for Injunctive and Declaratory Relief Against Zibilich Are Moot.

Article III grants federal courts jurisdiction over only cases and controversies.[92] "[A]n 'actual controversy' must exist not only 'at the time the complaint is filed,' but through 'all stages' of the litigation."[93] "A case becomes moot—and therefore no longer a 'Case' or 'Controversy' for purposes of Article III—'when the issues presented are no longer "live" or the parties lack a legally cognizable interest in the outcome.'"[94] "No matter how vehemently the parties continue to dispute the lawfulness of the conduct that precipitated the lawsuit, the case is moot if the dispute 'is no longer embedded in any actual controversy about the plaintiffs' particular legal rights.'"[95] "The mootness doctrine applies to equitable relief but will not bar any claim for damages, including nominal damages."[96]

However, "a defendant cannot automatically moot a case simply by ending its unlawful conduct once sued."[97] "Otherwise, a defendant could engage in unlawful conduct, stop when sued to have the case declared moot, then pick up where he left off,

---

[92] *Already, LLC v. Nike, Inc.*, 568 U.S. 85, 90 (2013).
[93] *Id.* at 91 (quoting *Alvarez v. Smith*, 558 U.S. 87, 92 (2009)).
[94] *Id.* (quoting *Murphy v. Hunt*, 455 U.S. 478, 481 (1982)).
[95] *Id.* (quoting *Alvarez*, 558 U.S. at 93).
[96] *Brinsdon v. McAllen Indep. Sch. Dist.*, 863 F.3d 338, 345 (5th Cir. 2017) (citing *Morgan v. Plano Indep. Sch. Dist.*, 589 F.3d 740, 748 n.32 (5th Cir. 2009)).
[97] *Already*, 568 U.S. at 90.

repeating this cycle until he achieves all his unlawful ends."[98] A defendant claiming mootness because he cannot or will not perform the alleged wrongful activity again "bears the formidable burden of showing that it is absolutely clear the allegedly wrongful behavior could not reasonably be expected to recur."[99]

In this case, Lightfoot seeks injunctive and declaratory relief to require Zibilich to turn over the audio recordings of the proceedings before him in Lightfoot's case to determine whether Zibilich would afford him a fair trial. However, since the third amended complaint was filed, Zibilich was not reelected to the Orleans Parish Criminal District Court.[100] Accordingly, Zibilich no longer has the authority to deny Lightfoot access to the audio recordings. Moreover, Zibilich is no longer presiding over Lightfoot's case, so there is no danger that Zibilich would deny Lightfoot a fair trial. Because Zibilich is no longer on the bench and is no longer involved in Lightfoot's case, Defendants have met their formidable burden that the alleged wrongful conduct cannot recur. For these reasons, Lightfoot's claims for injunctive and declaratory relief against Zibilich must be dismissed without prejudice as moot.

### 5. The *Rooker-Feldman* Doctrine Bars Consideration of Lightfoot's Constitutional Claims for Damages Against Zibilich, Plaisance, and Schmidt in Their Individual Capacities.

In *Rooker v. Fidelity Trust Co.*[101] and *District of Columbia Court of Appeals v. Feldman*[102] the Supreme Court held that "federal district courts lack jurisdiction to entertain collateral attacks on state court judgments" and orders.[103] "[S]tate courts must

---

[98] *Id.*
[99] *Id.* (quoting *Friends of Earth, Inc. v. Laidlaw Env't Servs. (TOC), Inc.*, 528 U.S. 167, 190 (2000)).
[100] R. Doc. 104, at p. 3.
[101] 263 U.S. 413 (1923).
[102] 460 U.S. 462 (1983).
[103] *Liedtke v. State Bar of Tex.*, 18 F.3d 315, 317 (5th Cir. 1994).

resolve constitutional questions that arise during proceedings."[104] "If the state trial court errs in deciding the constitutional issues, the judgment is not void, but the appropriate state appellate court must correct it."[105] "Any subsequent recourse to federal court is limited to an application for a writ of certiorari to the United States Supreme Court."[106] Thus, the doctrine "is confined to . . . cases brought by state-court losers complaining of injuries caused by state-court judgments rendered before the district court proceedings commenced and inviting district court review and rejection of those judgments."[107] Accordingly, the *Rooker-Feldman* doctrine "usually applies only when a plaintiff explicitly attacks the validity of a state court's judgment, though it can also apply if the plaintiff's federal claims are so inextricably intertwined with a state judgment that the federal court 'is in essence being called upon to review the state court decision.'"[108]

The Fifth Circuit "has determined that issues are 'inextricably intertwined' when a plaintiff casts a complaint in the form of a civil rights action simply to circumvent the *Rooker–Feldman* rule."[109] This rule extends to "suits for equitable relief and damages as attempts to attack collaterally the validity of state court judgments."[110] For example, in *Eitel v. Holland*, the plaintiff filed suit in federal court under Section 1983 against the state court judge who was presiding over his tort case and the two defense attorneys in that state court case for allegedly conspiring to deprive the plaintiff of his due process rights.[111] Several preliminary motions in the state court case, including one for the recusal

---

[104] *Richard v. Hoechst Celanese Chem. Grp., Inc.*, 355 F.3d 345, 350 (5th Cir. 2003).
[105] *Id.* (citing *Rooker*, 263 U.S. at 416).
[106] *Id.* (citing *Rooker*, 263 U.S. at 416).
[107] *Exxon Mobil Corp. v. Saudi Basic Indus. Corp.*, 544 U.S. 280, 284 (2005).
[108] *Ill. Cent. R.R. Co. v. Guy*, 682 F.3d 381, 391 (5th Cir. 2012) (citation omitted) (quoting *Feldman*, 460 U.S. at 483 n.16) (citing *Weaver v. Tex. Cap. Bank N.A.*, 660 F.3d 900, 904 (5th Cir. 2011)).
[109] *Richard*, 355 F.3d at 351.
[110] *Liedtke*, 18 F.3d at 318 n.12; *see, e.g.*, *Chrissy F. v. Miss. Dep't of Pub. Welfare*, 995 F.2d 595, 598-600 (5th Cir. 1993); *Eitel v. Holland*, 798 F.2d 815, 817-18; *Reed v. Terrell*, 759 F.2d 472, 473-74 (5th Cir. 1985).
[111] *Eitel*, 798 F.2d at 816.

of the state court judge, were decided adversely to the plaintiff.[112] Citing *Feldman*, the Fifth Circuit held that because the plaintiff sought "a judgment for damages . . . that would be tantamount to reversing the state court orders unfavorable to him," these issues were "inextricably intertwined" with the state court's orders, and the federal lower courts lacked jurisdiction to hear them.[113]

In this case, Lightfoot alleges he—and in turn Judge Hunter—was entitled to the audio recordings of the proceedings in his case before Judge Zibilich to determine whether or not Zibilich's recusal was warranted. Lightfoot seeks damages under Section 1983 from Zibilich for allegedly instructing Plaisance and Schmidt not to turn over the recordings and from Plaisance and Schmidt for not turning over the recordings. The question whether Lightfoot was entitled to the audio recordings was submitted to the Rules Committee, which opined that the recordings were not public records under Louisiana law and could not be produced; Judge Hunter was to render his opinion in the recusal matter based on the transcripts of the proceedings before Zibilich. Sitting en banc the Orleans Parish Criminal District Court adopted this opinion and ruled the court, through Zibilich, Plaisance, and Schmidt, could not produce the recordings. Complying with the en banc order and based on the transcripts of proceedings before Zibilich, Judge Hunter then ruled Zibilich did not have to recuse himself.[114]

Lightfoot's claims for damages against Zibilich, Plaisance, and Schmidt

---

[112] *Id.*

[113] *Id.* at 818; *see also Chrissy F.*, 995 F.2d at 597-600 (holding the *Rooker-Feldman* doctrine barred plaintiff's Section 1983 claims for injunctive, declaratory, and compensatory relief against state court officials and other state officials for alleged depriving a minor of constitutional rights in court because the relief were inextricably intertwined with the state court custody ruling and would essentially reverse it); *Reed*, 759 F.2d at 472-74 (holding the *Rooker-Feldman* doctrine barred plaintiff's claims for injunctive, declaratory, and compensatory relief under 42 U.S.C. §§ 1983, 1985, and 1986 against the judge and court clerk, among others, for denying his claim for attorney's fees in divorce proceedings because the claims were inextricably intertwined with the state court judgment and would essentially reverse it).

[114] *Lightfoot*, slip op. at 4.

individually essentially seek to reverse the en banc court's ruling and, ultimately, Judge Hunter's ruling applying it. The state court orders held that Lightfoot could not obtain the recordings, but still, in spite of these rulings, he now maintains he can. Lightfoot challenges the actions of the "Rules of Court Committee, Judge Franz Zibilich, and/or the En Banc Members of the Court of Orleans Parish Criminal District Court" as "improper and unconstitutional."[115] He alleges that Defendants conspired to deprive him of the recordings, resulting in the Rules Committee's opinion, but these allegations, while veiled as a civil rights complaint, really seek to discredit the en banc court and Judge Hunter's unfavorable orders. As in *Eitel*, the Court cannot entertain claims "for damages . . . that would be tantamount to reversing the state court orders unfavorable to" Lightfoot.[116] Accordingly, Lightfoot's claims are "inextricably intertwined" with the orders of the en banc court and Judge Hunter.[117] "A 'state court loser' cannot invite a federal district court to 'sit in direct review of state court decisions' by asserting constitutional claims that the state court had not directly addressed."[118] The proper avenue to challenge these orders is the appropriate state appellate court; only afterward can Lightfoot bring these claims into the federal judicial system through an application for a writ of certiorari to the U.S. Supreme Court.[119]

For these reasons, under the *Rooker-Feldman* doctrine, the Court lacks jurisdiction to hear Lightfoot's claims for damages against Zibilich, Plaisance, and Schmidt individually. Accordingly, Lightfoot's claims for damages against Zibilich,

---

[115] R. Doc. 57 ¶ 84.
[116] *Eitel*, 798 F.2d at 818.
[117] *See id.*
[118] *Truong v. Bank of Am., N.A.*, 717 F.3d 377, 385 (5th Cir. 2013) (first citing *Exxon Mobil*, 544 U.S. at 286 n.1; and then citing *Feldman*, 460 U.S. at 482 n.16).
[119] *Richard*, 355 F.3d at 350.

Plaisance, and Schmidt individually must be dismissed without prejudice.[120]

### D.    Plaintiffs' State Law Claims Are Dismissed Without Prejudice

Plaintiffs also assert various state law claims against Defendants. Having dismissed each of Plaintiffs' federal claims, the Court declines to exercise supplemental jurisdiction over Plaintiffs' state law claims. District courts have discretion not to exercise supplemental jurisdiction over a claim when all claims over which the court had original jurisdiction have been dismissed.[121] Although the "'general rule' is to decline to exercise jurisdiction over pendent state-law claims" under such circumstances, the "rule is neither mandatory nor absolute."[122] Rather, a court must consider "both the statutory provisions of 28 U.S.C. § 1367(c) and the balance of the relevant factors of judicial economy, convenience, fairness, and comity."[123] Having considered the applicable law, the complexity of Plaintiffs' remaining state law claims, and the fact that the trial of this matter has not yet been set, the Court declines to exercise supplemental jurisdiction over these claims and dismisses Plaintiff's remaining state law claims without prejudice.[124]

---

[120] Because the Court dismisses the remaining federal claims under the *Rooker-Feldman* doctrine, it does not reach Defendants' arguments for *Younger* abstention or qualified immunity.

[121] 42 U.S.C. § 1367(c)(3). 42 U.S.C. § 1367(c) reads:

   The district courts may decline to exercise supplemental jurisdiction over a claim under subsection (a) if:
      (1) the claim raises a novel or complex issue of State law, (2) the claim substantially predominates over the claim or claims over which the district court has original jurisdiction, (3) the district court has dismissed all claims over which it has original jurisdiction, or (4) in exceptional circumstances, there are other compelling reasons for declining jurisdiction.

[122] *Batiste v. Island Records Inc.*, 179 F.3d 217, 227 (5th Cir. 1999) (quoting *McClelland v. Gronwaldt*, 155 F.3d 507, 519 (5th Cir. 1998)).

[123] *Id.* (citations omitted).

[124] *See Carnegie-Mellon Univ. v. Cohill*, 484 U.S. 343, 350 n.7 (1988) (stating that "in the usual case in which all federal-law claims are eliminated before trial, the balance of factors to be considered under the pendent jurisdiction doctrine . . . will point toward declining to exercise jurisdiction over the remaining state-law claims"); *Batiste v. Island Records, Inc.*, 179 F.3d 217, 227 (5th Cir. 1999) (reversing the district court for declining to retain supplemental jurisdiction over the state law claims that remained following the district court's grant of summary judgment on all of the plaintiff's federal claims because "the remaining [state law] claims d[id] not involve any 'novel or complex' issues of state law," and "[t]he case had been pending in the district court for almost three years"). The Court dismisses without prejudice all of Plaintiffs' remaining state law claims against each Defendant in this case.

## IV.    Conclusion

For the foregoing reasons,

**IT IS ORDERED** that Defendants Franz Zibilich, Dawn Plaisance, Jan Schmidt, and the Orleans Parish Criminal District Court Rules of Court Committee's Motion to Dismiss[125] is **GRANTED**.

**IT IS FURTHER ORDERED** Plaintiffs' claims against "all Defendants" are **DISMISSED WITHOUT PREJUDICE** as the claims are impermissibly vague.

**IT IS FURTHER ORDERED** that Plaintiffs lack standing to bring criminal charges under Louisiana statutes against Zibilich, Dawn Plaisance, and Jan Schmidt and these claims are **DISMISSED WITHOUT PREJUDICE FOR LACK OF STANDING**.

**IT IS FURTHER ORDERED** that Hawkins and Sanders federal law claims based on the violation of Lightfoot's constitutional rights are **DISMISSED WITHOUT PREJUDICE FOR LACK OF STANDING**.

**IT IS FURTHER ORDERED** that all claims against the Orleans Parish Criminal District Court Rules of Court Committee are **DISMISSED WITH PREJUDICE AS THE COURT RULES COMMITTEE IS NOT AN ENTITY CAPABLE OF BEING SUED**.

**IT IS FURTHER ORDERED** Plaintiffs' claims for damages under 42 U.S.C. § 1983 against Defendants in their official capacities are **DISMISSED WITHOUT PREJUDICE AS BARRED BY THE ELEVENTH AMENDMENT**.

**IT IS FURTHER ORDERED** that Plaintiff Lightfoot's claims for injunctive and declaratory relief against Zibilich ordering him to turn over the audio recordings of the

---

[125] R. Doc. 63.

proceedings before him are **DISMISSED WITHOUT PREJUDICE AS MOOT**.

      **IT IS FURTHER ORDERED** Lightfoot's constitutional claims under 42 USC 1983 for damages against Franz Zibilich, Dawn Plaisance, and Jan Schmidt in their individual capacities are **DISMISSED WITHOUT PREJUDICE** as barred for lack of jurisdiction by the *Rooker-Feldman* doctrine.[126]

      **IT IS FURTHER ORDERED** Plaintiffs' state law claims against Franz Zibilich, Dawn Plaisance, and Jan Schmidt are **DISMISSED WITHOUT PREJUDICE** as the Court declines to exercise its supplemental jurisdiction over these claims.

      **New Orleans, Louisiana, this 16th day of March, 2023.**

                                       **SUSIE MORGAN**
                             **UNITED STATES DISTRICT JUDGE**

**Clerk to Notify via Mail**:

Geralyn Hawkins
500 South Starrett Road
New Orleans, LA 70123

Chad Lightfoot #301162
Orleans Parish Justice Center
I.D. #2516543
300 Perdido Street
New Orleans, LA 70119

Nicole Thompson
P.O. Box 1472
Kenner, LA 70063

**Clerk to Notify via E-Mail:**

Geralyn Hawkins
geralynhawkins@yahoo.com

---

[126] To the extent claims are made by Hawkins and Sanders based on the violation of Lightfoot's constitutional rights, those claims are dismissed without prejudice for lack of standing.