## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| **GERALYN HAWKINS, ET AL.,** | **CIVIL ACTION** |
| **Plaintiffs** | |
| **VERSUS** | **NO.  19-13323** |
| **SHELLY SANDERS, ET AL.,** | **SECTION: "E" (1)** |
| **Defendants** | |

## ORDER AND REASONS

Before the Court is Defendants', Leon Cannizzaro, Jr. and Andre C. Gaudin Jr., Motion to Dismiss.[1] Plaintiffs oppose the motion.[2] Having reviewed the pleadings and the case law, the Court rules as follows.

The Court notes that Leon Cannizzaro, Jr. is sued in his official and individual capacities.[3] "Jason Williams has been sworn in to succeed Mr. Cannizzaro as the Orleans Parish District Attorney and therefore Mr. Williams, in his official capacity, is the proper party."[4] Accordingly, Jason Williams in his official capacity as the Orleans Parish District Attorney is hereby substituted in the place of Leon Cannizzaro, Jr. in his official capacity.[5]

## I.   Background[6]

Plaintiffs Geralyn Hawkins, Nichole Thompson, and Chad Lightfoot (sometimes referred to collectively as "Plaintiffs") sue numerous defendants, captioning their complaint as a "Civil Rights Complaint 42 U.S.C. Section 1983; 1985; and 1986." Plaintiffs' claims stem from a pending criminal proceeding against Lightfoot for perjury, RICO theft,

---

[1] R. Doc. 67.
[2] R. Doc. 140.
[3] R. Doc. 57 at p. 13, ¶ 8.
[4] *Vega v. Gusman*, 2021 WL 1967494, at *1 n.18 (E.D. La. 5/17/2021) (Vitter, J.).
[5] Leon Cannizzaro, jr. remains a defendant to the extent he is sued in his individual capacity.
[6] The following allegations are based on the third amended complaint. R. Doc. 57.

and RICO identity fraud in Louisiana state criminal court.[7]  Lightfoot has a criminal and civil history in Louisiana federal and state courts dating back to 1996.[8]

Hawkins, Thompson, and Lightfoot obtained personal loans in 2010 from Defendant Greater New Orleans Federal Credit Union ("the Union").[9] To apply for the loans, Plaintiffs submitted personal and/or private information to the Union, such as their places of employment, social security numbers, and drivers' license information.[10] In 2012, the Union conducted an internal investigation of numerous loans when it grew suspicious because many of the loan applicants had the same information, such as addresses or job information.[11]  Plaintiffs' loans were among those investigated.[12] Defendants Shelly Sanders, Heather Rodgers, and Gerry Kish, employees of the Union, assisted with the investigation.[13] Ultimately, Louisiana authorities accused Plaintiffs of participating in an "auto loan shopping scam" and fraud against the Union, and Lightfoot was arrested on October 15, 2015 and later charged with one count of perjury, one count of RICO identity theft, and one count of fraud.[14]

Plaintiffs filed this lawsuit in October 2019.[15] Plaintiffs sue Defendants former District Attorney Leon Cannizzaro, Jr. and Assistant District Attorney Andre Gaudin in

---

[7] R. Doc. 57, ¶ 56.

[8] *See, e.g., United States v. Lightfoot*, Civ. A. No. 17-00274, 2018 WL 5269827 (W.D. La. Oct. 22, 2018) ("Lightfoot is charged in the Indictment [Doc. No. 1] with one count of Fraud Scheme in Connection with Major Disaster or Emergency Benefits, in violation of 18 U.S.C. § 1040(a)(2)."), *affirmed*, 809 F. App'x. 246 (5th Cir. 2020); *Lightfoot v. Corrections Corp. of Am.*, 101 F.3d 699 (5th Cir. 1996), 1996 WL 661267, at *1 (barring Lightfoot from filing any civil lawsuit as a pauper within the jurisdiction of the Fifth Circuit).

[9] R. Doc. 57 ¶¶ 20-21, 23.

[10] *Id.* ¶¶ 22, 24.

[11] *Id.* ¶ 26.

[12] *Id.* ¶ 27-29.

[13] *Id.* ¶¶ 26-28.

[14] *Id.* ¶ 25, 32-33. In the third amended complaint, Plaintiffs allege that multiple grand juries were convened, multiple indictments issued against Lightfoot on various charges that were later dismissed when the later grand jury superseded those charges, and Lightfoot was arrested no fewer than four times. *Id.* at pp. 4-5. It appears that the three charges noted above are now the only charges pending as of the date of filing the third amended complaint.

[15] R. Doc. 1.

their official and individual capacities for fabricating evidence to support the criminal allegations against Plaintiffs and for bad faith prosecution during pretrial hearings.[16] The Court has substituted Jason Williams in his official capacity as the Orleans Parish District Attorney in the place of Leon Cannizzaro in his official capacity.[17] Accordingly, for the purpose of this Order and Reasons, "Defendants" is defined as Jason Williams in his official capacity, Leon Cannizzaro, Jr. in his individual capacity, and Andre Gaudin in his official and personal capacity.

The claims against Defendants stem from Gaudin's intent to, at Lightfoot's trial, use bank records obtained from the Union through a subpoena duces tecum as evidence of Lightfoot's bad acts under Louisiana Code of Evidence article 404(B).[18] Specifically, Plaintiffs allege "Gaudin drafted and filed at his hand, a list of alleged wrongful acts of bank fraud committed [by Plaintiffs] . . . to be used as 404(B) evidence against Lightfoot" without providing Plaintiffs any bill of information, indictment, opportunity to defend themselves, or an attorney for this bad act evidence.[19]  Plaintiffs allege that Defendants' acts violated their Fourth Amendment protections against unreasonable search and seizure as well as their Sixth Amendment trial rights, as incorporated against the states by the Fourteenth Amendment.[20] Plaintiffs allege Defendants violated 42 U.S.C. §§ 1983,

---

[16] R. Doc. 57 ¶¶ 32-48.

[17] *Vega v. Gusman*, 2021 WL 1967494, at *1 n.18 (E.D. La. 5/17/2021) (Vitter, J.).

[18] *Id.* Louisiana Code of Evidence article 404(B) states:

**B. Other crimes, wrongs, or acts.** (1) Except as provided in Article 412, evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show that he acted in conformity therewith. It may, however, be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, absence of mistake or accident, provided that upon request by the accused, the prosecution in a criminal case shall provide reasonable notice in advance of trial, of the nature of any such evidence it intends to introduce at trial for such purposes, or when it relates to conduct that constitutes an integral part of the act or transaction that is the subject of the present proceeding.

[19] R. Doc. 57 ¶¶ 33, 99.

[20] *Id.* ¶¶ 33, 43, 95, 99, 123.

1985(2)-(3), and 1986 for conspiring to deprive Plaintiffs of due process and equal protection of the law.[21] Plaintiffs allege several state law privacy violations for obtaining private bank information, including article I, section 5, of the Louisiana Constitution; La. Rev. Stat. §§ 6:333 and 9:3571; and Louisiana Code of Civil Procedure article 1469.2.[22] Finally, Plaintiffs allege against "all defendants" nebulous violations of the Privacy Act, 5 U.S.C. 552a; Louisiana's Unfair Trade Practices and Consumer Protection Law, La. Rev. Stat. § 51:1401 *et seq.*; 31 U.S.C. § 5311; and the Eighth Amendment as well as alleged claims for defamation and breach of contract.[23]

Plaintiffs seek a declaratory judgment that Defendants violated La. Rev. Stat. §§ 6:333 and 9:3571; Louisiana Code of Civil Procedure article 1469.2; the Fourth, Fifth, Sixth, and Fourteenth Amendments; and 42 U.S.C. § 1985(2) in seeking evidence from the Union, as well as a preliminary injunction under Section 1983 preventing the Defendants from using that information.[24] Plaintiffs also seek damages from Defendants.[25] Finally, Plaintiffs ask this Court to charge Defendants with criminal violations of various Louisiana statutes under 42 U.S.C. § 1983.

Plaintiffs also sue the Union, Sanders, Rodgers, and Kish for improperly turning their private bank records over to Defendants. Plaintiffs also sue former Orleans Parish Criminal Court Judge Franz Zibilich; Jan Schmidt and Dawn Plaisance, two court

---

[21] *Id.* at pp. 1, 9-10, ¶¶ 43, 99-100.

[22] *Id.* ¶¶ 43, 56, 124.

[23] *Id.* ¶¶ 87-92, 94, 125. Plaintiffs cite repeatedly to the "Consumer Rights Act" allegedly contained at 51 U.S.C. § 1401. *See, e.g.*, R. Doc. 57 at 2, ¶¶ 42, 90. There does not appear to be a section 1401 in title 51 of the United States Code, and in fact title 51 is entitled "National and Commercial Space Programs." However, section 1401 of title 51 of the Louisiana Revised Statutes is the short title for Louisiana's Unfair Trade Practices and Consumer Protection Law. Because the Court "give[s] *pro se* briefs a liberal construction," the Court construes Plaintiffs' citation to 51 U.S.C. § 1401 as a claim under Louisiana's Unfair Trade Practices and Consumer Protection Law. *See Brown v. Sudduth*, 675 F.3d 472, 477 (5th Cir. 2012).

[24] R. Doc. 57, ¶¶ 61, 112.

[25] *Id.* ¶¶ 115-22.

reporters; and the Rules of the Court Committee of Orleans Parish Criminal Court ("the Rules Committee"). Plaintiffs sue these four Defendants for failing to turn over a transcript of a hearing in violation of an order issued by Judge Arthur Hunter when Hunter was considering Lightfoot's motion to recuse Zibilich from his criminal case and for Zibilich's rulings against Lightfoot in that criminal action.[26]

Defendants now move to dismiss Plaintiffs' official and individual capacity claims against them under Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6).[27]

## II.   Legal Standard

### A.   Rule 12(b)(1)

Federal courts are courts of limited jurisdiction; without jurisdiction conferred by statute, they lack the power to adjudicate claims."[28] A motion to dismiss under Federal Rules of Civil Procedure 12(b)(1) challenges a federal court's subject-matter jurisdiction.[29] Under Rule 12(b)(1), "[a] case is properly dismissed for lack of subject matter jurisdiction when the court lacks the statutory or constitutional power to adjudicate the case."[30] "Lack of subject-matter jurisdiction may be found in the complaint alone, the complaint supplemented by the undisputed facts as evidenced in the record, or the complaint supplemented by the undisputed facts plus the court's resolution of the disputed facts."[31] "When, as here, grounds for dismissal may exist under both Rule 12(b)(1) and Rule

---

[26] *Id.* ¶¶ 62-83.
[27] R. Doc. 67. Defendant Gaudin also moved to dismiss Plaintiffs' claims against him under Federal Rules of Civil Procedure 12(b)(5) for insufficient service of process; however, Gaudin has since accepted service through his attorney. R. Doc. 85.
[28] *In re FEMA Trailer Formaldehyde Products Liab. Litig. (Mississippi Plaintiffs)*, 668 F.3d 281, 286 (5th Cir. 2012).
[29] *See* Fed. R. Civ. P. 12(b)(1).
[30] *Home Builders Ass'n of Miss., Inc. v. City of Madison, Miss.*, 143 F.3d 1006, 1010 (5th Cir. 1998) (internal quotation marks and citation omitted).
[31] *In re FEMA*, 668 F.3d at 287.

12(b)(6), the Court should, if necessary, dismiss only under the former without reaching the question of failure to state a claim."[32]

## B.    Rule 12(b)(6)

Pursuant to Federal Rule of Civil Procedure 12(b)(6), a district court may dismiss a complaint, or any part of it, for failure to state a claim upon which relief may be granted if the plaintiff has not set forth factual allegations in support of his claim that would entitle him to relief.[33] "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"[34] "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."[35] The court, however, does not accept as true legal conclusions or mere conclusory statements, and "conclusory allegations or legal conclusions masquerading as factual conclusions will not suffice to prevent a motion to dismiss."[36] "[T]hreadbare recitals of elements of a cause of action, supported by mere conclusory statements" or "naked assertion[s] devoid of further factual enhancement" are not sufficient.[37]

In summary, "[f]actual allegations must be enough to raise a right to relief above the speculative level."[38] "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not

---

[32] *Valdery v. Louisiana Workforce Comm'n*, No. CIV.A. 15-01547, 2015 WL 5307390, at *1 (E.D. La. Sept. 10, 2015).
[33] *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007); *Cuvillier v. Taylor*, 503 F.3d 397, 401 (5th Cir. 2007).
[34] *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Twombly*, 550 U.S. at 570).
[35] *Id.*
[36] *S. Christian Leadership Conf. v. Sup. Ct. of the State of La.*, 252 F.3d 781, 786 (5th Cir. 2001) (citing *Fernandez-Montes v. Allied Pilots Ass'n*, 987 F.2d 278, 284 (5th Cir. 1993)).
[37] *Iqbal*, 556 U.S. at 663, 678 (citations omitted).
[38] *Twombly*, 550 U.S. at 555.

show[n]'—that the pleader is entitled to relief."[39] "Dismissal is appropriate when the complaint 'on its face show[s] a bar to relief.'"[40]

## III.   Legal Analysis

### A.   Official Capacity Claims Against Andre Gaudin Are Redundant and Dismissed With Prejudice.

Plaintiffs bring various claims against Andre C. Gaudin and Leon Cannizzaro, the latter of whom the Court has substituted Jason Williams in his place, in their official capacities.[41] A suit against a government official in his official capacity is, in effect, a suit against the government entity.[42] It is well-settled that bringing overlapping claims against multiple officials of the same government entity in their official capacities is redundant, duplicative, and unnecessary.[43] As a result, the Court dismisses the claims brought against Andre Gaudin in his official capacity with prejudice because they are redundant of the claims brought against Jason Williams in his official capacity as the Orleans Parish District Attorney.[44] With that said, the Court will consider the merits of the claims brought against Jason Williams in his official capacity.

### B.   Claims Against "All Defendants" Are Dismissed Without Prejudice.

In numerous paragraphs of the third amended complaint, Plaintiffs allege that "all named Defendants," "all Defendants," or "named Defendants" violated their constitutional or statutory rights.[45] Mere "conclusory allegations against [d]efendants as

---

[39] *Id.* (quoting Fed. R. Civ. P. 8(a)(2)).
[40] *Cutrer v. McMillan*, 308 F. App'x 819, 820 (5th Cir. 2009) (per curiam) (quotations omitted).
[41] R. Doc. 57 at p. 14, ¶ 12.
[42] *See Monnell v. Dep't of Social Servs. of City of New York*, 436 U.S. 658, 690 n.55 (1978).
[43] *See, e.g.*, *Bookenberger v. Terrebonne Parish*, 2019 WL 3858949, at *3 (E.D. La. 8/16/2019) (Lemelle, J.) (citing *St. Martin v. Jones*, 2008 WL 4412267, at *3 (E.D. La. 9/17/2008) (Berrigan, J.) (stating the Fifth Circuit has expressed identical claims against individual public officials and the entities by which they are employed are barred by virtue of subjecting the defendant-entity to redundant liability)).
[44] *Id.*
[45] *See, e.g, id.* at ¶¶ 18, 85-88, 90, 92, 95, 125.

7

a group" that "fail[ ] to allege the personal involvement of any defendant" are insufficient to put Defendants on notice of their alleged wrongdoing.[46] A plaintiff must allege facts that "establish each individual [d]efendant's liability for the misconduct alleged."[47] When a number of defendants are named in a complaint, a plaintiff cannot refer to all defendants "who occupied different positions and presumably had distinct roles in the alleged misconduct" without specifying "which defendants engaged in what wrongful conduct."[48] A complaint that contains "impermissibly vague group pleading" will be dismissed.[49]

Accordingly, the claims against "all named Defendants," "all Defendants," or "named Defendants," including Cannizzaro in his individual capacity, Gaudin in his individual capacity,[50] and Williams in his official capacity, are dismissed without prejudice for impermissible group pleading and failing to specify how Cannizzaro, Gaudin, and Williams specifically violated Plaintiffs' rights. However, when the Plaintiffs referenced any of these claims elsewhere in their third amended complaint specifically against the Defendants, these claims are addressed below.

---

[46] *Galicki v. New Jersey*, No. 14-169, 2015 WL 3970297, at *2 (D.N.J. June 29, 2015) (dismissing plaintiffs' claims without prejudice for failure to provide each defendant with notice of its alleged participation in the racketeering enterprise).

[47] *Id.*; *see also Ashcroft v. Iqbal*, 556 U.S. 662, 676 (2009) (finding that a plaintiff must plead that each Government-official defendant, through the official's own individual actions, has violated the Constitution); *Aruanno v. Main*, 467 F. App'x 134, 137-38 (3d Cir. 2012) (dismissal of § 1983 action was appropriate where Defendants were collectively sued as "[government] personnel" and failed to allege the personal involvement of the individual Defendants).

[48] *Falat v. County of Hunterdon*, No. 12-6804, 2013 WL 1163751, at *3 (D.N.J. Mar. 19, 2013).

[49] *Id.*

[50] The Court has already dismissed the claims against Gaudin in his official capacity with prejudice in this Order and Reasons.

### C.   Plaintiffs Lack Standing to Request Criminal Charges Against Defendants.

Plaintiffs request the Court invoke its "pendent/supervisory jurisdiction" under 42 U.S.C. § 1983 to charge Defendants with criminal violations of various Louisiana statutes.[51]  As the Court has stated before, this is beyond its authority and jurisdiction.[52] "Section 1983 and *Bivens* actions are available to seek damages and injunctive relief. They are not avenues for private citizens to bring criminal charges."[53] "[A] private citizen lacks a judicially cognizable interest in the prosecution or nonprosecution of another."[54] Because Plaintiffs lack standing to bring criminal charges against Defendants, these claims must be dismissed without prejudice.

### D.   The Federal Law Claims Against Defendants Are Dismissed.

In their motion to dismiss, Defendants maintain that this Court lacks subject matter jurisdiction and should dismiss Plaintiffs' claims for injunctive and declaratory relief under Rule 12(b)(1) because *Younger v. Harris*[55] and its progeny require this Court to abstain from granting injunctive or declaratory relief that effects an ongoing state criminal proceeding—in this case Lightfoot's pending criminal trial. They argue that Lightfoot's case is pending, Louisiana has a strong interest in enforcing its criminal laws, and Lightfoot has an adequate opportunity to raise his claims in his state proceeding. Defendants argue that 12 U.S.C. § 3410 also gave Hawkins and Thompson an opportunity to quash the subpoenas in Lightfoot's criminal proceeding, but they waived their rights

---

[51] R. Doc. 57, ¶¶ 96-111.
[52] R. Doc. 148.
[53] *Banks v. Gillie*, No. 03-3098, 2004 U.S. Dist. LEXIS 5413, at *20 (E.D. La. Feb. 25, 2004).
[54] *See Linda R.S. v. Richard D.*, 410 U.S. 614, 619 (1973).
[55] *Younger v. Harris*, 401 U.S. 37 (1971).

by not exercising them.[56] Defendants argue that Plaintiffs' claims for damages are barred by absolute immunity because Gaudin was acting in his advocational function as prosecutor in seeking the subpoena duces tecum or, alternatively, that Plaintiffs' claims are barred by qualified immunity because Plaintiffs have not stated that Defendants violated a clearly established right.

### 1. *Younger* Abstention Requires Dismissal of Lightfoot's Claims for Injunctive and Declaratory Relief Without Prejudice.

Plaintiffs ask the Court to enjoin Defendants from using the 404(B) bad acts evidence obtained from the Union in the ongoing prosecution against Lightfoot in Orleans Parish under 42 U.S.C. § 1983, alleging violations of the Fourth and Sixth Amendments, as incorporated against the states by the Fourteenth Amendment, as well as violations of various state law privacy rights, including article I, section 5, of the Louisiana Constitution; La. Rev. Stat. §§ 6:333 and 9:3571; and Louisiana Code of Civil Procedure article 1469.2. Plaintiffs also ask the Court to issue a declaratory judgment that Defendants have violated La. Rev. Stat. §§ 6:333 and 9:3571; Louisiana Code of Civil Procedure article 1469.2; the Fourth, Fifth, Sixth, and Fourteenth Amendments; and 42 U.S.C. § 1985(2) in seeking evidence from the Union.

While generally "federal courts are obliged to decide cases within the scope of federal jurisdiction," the Supreme Court "has recognized, however, certain instances in which the prospect of undue interference with state proceedings counsels against federal

---

[56] Defendants also argue to the extent Plaintiffs' claims for injunctive and declaratory relief can be construed as pre-trial habeas relief to release Lightfoot, those claims are barred because Lightfoot has not exhausted his state remedies. *See Dickerson v. Louisiana*, 816 F.2d 220, 225 (5th Cir. 1987). The Court does not construe Plaintiffs' claims as requests for pre-trial habeas relief, however, because Plaintiffs only ask the Court to enjoin Defendants' use of Plaintiffs' bank records as 404(B) bad acts evidence at Lightfoot's upcoming trial. They do not ask for Lightfoot's release.

relief."[57] *Younger v. Harris*[58] "exemplifies one class of cases in which federal-court abstention is required: When there is a parallel, pending state criminal proceeding, federal courts must refrain from enjoining the state prosecution."[59] "The *Younger* doctrine applies not only to suits for injunctive relief, as in *Younger* itself, but also extends to suits for declaratory relief."[60] When *Younger* abstention applies, a court should dismiss the relevant claims without prejudice for lack of subject matter jurisdiction.[61]

The Anti-Injunction Act provides that "[a] court of the United States may not grant an injunction to stay proceedings in a State court except as expressly authorized by Act of Congress, or where necessary in aid of its jurisdiction, or to protect or effectuate its judgments."[62] Section 1983 "is an express authorization from Congress permitting federal courts to enjoin state proceedings in order to protect federal rights," but it "does not 'qualify in any way the principles of equity, comity, and federalism that must restrain a federal court when asked to enjoin a state court proceeding.'"[63]

Under the *Younger* abstention doctrine, federal courts should generally decline to exercise jurisdiction when: "(1) the federal proceeding would interfere with an 'ongoing state judicial proceeding'; (2) the state has an important interest in regulating the subject matter of the claim; and (3) the plaintiff has 'an adequate opportunity in the state

---

[57] *Sprint Commc'ns, Inc. v. Jacobs*, 571 U.S. 69, 72, (2013).
[58] *Younger v. Harris*, 401 U.S. 37 (1971).
[59] *Sprint*, 571 U.S. at 72.
[60] *Nobby Lobby, Inc. v. City of Dallas*, 970 F.2d 82, 86 (5th Cir. 1992).
[61] *Blakely v. Andrade*, 360 F. Supp. 453, 471 (N.D. Tex. 2019) (citing *Thomas v. Texas*, 294 F.Supp.3d 576, 593–96 (N.D. Tex. 2018)).
[62] 28 U.S.C. § 2283.
[63] *Gates v. Strain*, 885 F.3d 874, 880 (5th Cir. 2018) (quoting *Mitchum v. Foster*, 407 U.S. 225, 242-43 (1972)).

proceedings to raise constitutional challenges.'"[64] When those three criteria are met and so *Younger* applies, a federal court may only enjoin or provide declaratory relief to a state-court criminal proceeding if one of three narrow exceptions applies:

> (1) the state-court proceeding was brought in bad faith or to harass the federal plaintiff; (2) the federal plaintiff seeks to challenge a state statute that is "flagrantly and patently violative of express constitutional prohibitions in every clause, sentence, and paragraph, and in whatever manner and against whomever an effort might be made to apply it," or (3) where other "extraordinary circumstances" threaten "irreparable loss [that] is both great and immediate."[65]

Applying the three criteria to determine whether *Younger* applies to this case, first, it is undisputed that the state prosecution against Lightfoot is still pending.[66] Plaintiffs in this action seek to prevent Defendants from accessing and using Plaintiffs' bank records as evidence at Lightfoot's upcoming criminal trial, evidence which the state trial court has already deemed admissible.[67] The proceedings before this Court would therefore clearly interfere with an ongoing state judicia; proceeding. Second, because the underlying state proceeding is a criminal prosecution, it "concerns the enforcement of state criminal laws, something in which the state has a strong interest."[68]

Third, Plaintiffs admit that Lightfoot had multiple opportunities to challenge the use of their bank records as evidence: "Lightfoot's defense counsels continued to note their objections to the court's acceptance of the prejudicial material."[69] Moreover, "[d]efense counsel Keven Boshea appealed the trial court's ruling, but the writ appealed

---

[64] *Bice v. La. Pub. Def. Bd.*, 677 F.3d 712, 716 (5th Cir. 2012) (quoting *Middlesex Cty. Ethics Comm. v. Garden State Bar Ass'n*, 457 U.S. 423, 432 (1982)).
[65] *Gates*, 885 F.3d at 880 (quoting *Younger*, 401 U.S. at 45, 53-54).
[66] *See, e.g.*, R. Doc. 57, at p. 2 ("The civil rights complaint described below stems from a pending state court proceeding . . . .").
[67] *Id.* ¶¶ 55, 61.
[68] *Gates*, 885 F.3d at 880.
[69] R. Doc. 57, ¶ 56.

by Kevin Boshea does not include any of the constitutional objections raised [in the Third Amended Complaint], nor did Boshea raise any issues concerning Gaudin's subpoena failure to meet the criteria of La. R.S. 6:333; 9:3571."[70] It is irrelevant that Lightfoot and his counsel did not raise all of his claims in their appeal. The "argu[ment] that [a would-be federal plaintiff] has been unsuccessful or is likely to be unsuccessful in raising his constitutional claims in state court . . . is irrelevant. The relevant question is whether the would-be federal plaintiff has the *opportunity* to raise his federal claims in state court."[71] In other words, a would-be federal plaintiff must argue "that he cannot *raise* his constitutional claims in the state court."[72] Lightfoot has clearly had the opportunity to raise his objections in state court. Accordingly, *Younger* abstention precludes the Court from deciding Lightfoot's claims for injunctive or declaratory relief.

As to Plaintiffs Hawkins and Thompson, however, there does not appear to be any opportunity for nonparties like Hawkins and Thompson to intervene in Lightfoot's criminal proceeding. A nonparty who is *issued* a subpoena can generally challenge it in that proceeding[73] because a "subpoena . . . secure[s] jurisdiction over a witness, who is usually not a party to the action, so as to obtain from the witness testimony or documents (or other things) needed by one of the parties."[74] However, the Court has found no

---

[70] *Id.*

[71] *Gates*, 885 F.3d at 880.

[72] *Id.*

[73] *See, e.g.*, In re *Grand Jury Subpoenas Issued to Certain Members of the Orleans Levee District*, 95-0042, at p. 1 (La. 1/9/95); 648 So. 2d 864, 864 (denying motion to quash filed by persons issues subpoenas); *Louisiana v. Johnson*, 301 So. 2d 609, 611-12 (La. 1974) (upholding trial court's ruling that person issued subpoena duces tecum could not satisfy the subpoena); La. Code Crim. Proc. art. 732 (2022) (giving courts the authority to "vacate or modify [a] subpoena if it is unreasonable or oppressive"); *id.* art. 17 (giving courts the authority to issue orders "as may be necessary or proper in aid of its jurisdiction").

[74] *Hooper v. La. Dep't of Agric. & Forrestry*, 2005-2481, at p. 5 (La. App. 1 Cir. 3/23/07); 960 So. 2d 148, 153. *Hooper* was discussing subpoenas in a civil trial, but the same principle is applicable in a criminal one as well. *See, e.g.*, La. Code Crim. Proc. art. 737 (giving courts in criminal matters the authority to hold persons issued subpoenas in contempt for not complying with the subpoenas).

authority allowing a nonparty not already subject to the court's jurisdiction to intervene in a criminal case.[75] Defendants argue that the federal Right to Financial Privacy Act allows a financial institution's "customer [to] file a motion to quash a[] . . . judicial subpena . . . f[or] obtaining financial records . . . in the court which issued the subpena."[76] However, this Act applies only to subpoenas issued to a financial institution at the request of a "Government authority," which is defined as an "agency or department of the United States, or any officer, employee, or agent thereof."[77] Plaintiffs allege that Louisiana authorities, not federal ones, obtained their bank records. Therefore, the Right to Financial Privacy Act is inapplicable. Moreover, the Court has found no analogous Louisiana statute. Louisiana Revised Statutes Section 6:333, which governs a bank's disclosure of its customers' information, does not specifically authorize actions to quash subpoenas of customers' records in the proceeding that issued the subpoena, but it does envision that the customer can "take[] legal action to enjoin or otherwise restrain the release of the financial records."[78] However, as explained above, there is no authority for to intervene in a criminal proceeding, so any action to prevent the disclosure of the customers' bank records would have to be in a separate proceeding, whether state or federal. The relevant inquiry for the third factor in the *Younger* abstention doctrine is whether claimants can pursue their claims "in the *ongoing* state proceedings," not

---

[75] *Louisiana v. Luck*, 346 So. 2d 1104, 1105 (La. 1977) (Dennis, J., concurring in refusing supervisory writs) ("[T]here is no authority for a third party to intervene in a criminal proceeding."); *cf. Delta Retail 45, L.L.C. v. Cox*, 44,873, at pp. 3-4, 7 (La. App. 2 Cir. 10/28/09); 26 So. 3d 200, 202, 205 (stating, in response to the argument that "a third party . . . has no authority to intervene in . . . criminal proceedings," that the Louisiana Legislature has authorized a nonparty to file motions in an ongoing criminal proceeding in certain circumstances, particularly to seek the return of property seized as part of a criminal investigation under La. Rev. Stat. § 15:41). The Court has found no statute analogous to the one in *Delta Retail* that is applicable to this case.
[76] 12 U.S.C. § 3410.
[77] *Id.* §§ 3401, 3407.
[78] La. Rev. Stat. § 6:333(C)(3) (2021).

whether they can bring a *separate* state action.[79] Because Hawkins and Thompson had no opportunity to intervene in Lightfoot's ongoing criminal proceeding to bring their claims for injunctive or declaratory relief, the Court cannot abstain from deciding these claims under *Younger*.

To determine whether *Younger* abstention is proper as to Lightfoot's claims for injunctive or declaratory relief, the Court must next examine the three narrow exceptions to the *Younger* abstention doctrine. First, Lightfoot claims that his prosecution is in bad faith.[80] He does not allege that prosecutors are harassing him. "A prosecution is taken in bad faith if state officials proceed 'without hope of obtaining a valid conviction.'"[81] "[T]he 'bad faith' exception is narrow and should be granted parsimoniously."[82] It is Lightfoot's burden to establish proof of bad faith.[83] Here, Lightfoot alleges that two of his businesses at the heart of the case, which the Defendants claim to be fraudulent, are actually legitimate because they were legally incorporated and paid taxes.[84] These allegations alone do not prove that Defendants have no hope of obtaining a valid conviction.[85] The fact that a business is legally incorporated and pays its taxes does not preclude it from committing fraud in its transactions. Moreover, Lightfoot admits that he has already been found guilty in a related prosecution for bank fraud.[86] Lightfoot has not shown his prosecution is in bad faith. The second exception is also inapplicable because Lightfoot does not challenge the constitutionality of any statutes.

---

[79] *See Juidice v. Vail*, 430 U.S. 327, 337 (1977) (emphasis added).
[80] R. Doc. 57, at p. 11, ¶ 58.
[81] *Gates*, 885 F.3d at 881 (quoting *Perez v. Ledesma*, 401 U.S. 82, 85 (1971).
[82] *Id.* (quoting *Hefner v. Alexander*, 779 F.2d 277, 1980 (5th Cir. 1985).
[83] *Id.* (citing *Hensler v. Dist. Four Grievance Comm. of State Bar of Tex.*, 790 F.2d 390, 391 (5th Cir. 1986)).
[84] R. Doc. 57, ¶¶ 34-37.
[85] *Cf. Gates*, 885 F.3d at 881 (holding the allegation, supported by an affidavit, that a statement at the heart of the criminal defendant's case was forged is insufficient evidence of a bad faith prosecution).
[86] R. Doc. 57, ¶ 82.

As for the third exception for other extraordinary circumstances that threaten great and immediate irreparable loss, Lightfoot contends that Defendants' actions have exposed him to the risk of identity theft by having his bank records available in the public court record.[87] This exception is only available when "'extraordinary circumstances' render the state court incapable of fairly and fully adjudicating the federal issues before it."[88] "[S]uch circumstances must be 'extraordinary' in the sense of creating an extraordinarily pressing need for immediate federal equitable relief, not merely in the sense of presenting a highly unusual factual situation."[89] Irreparable injury is not the normal "cost, anxiety, and inconvenience" incidental to defending against a criminal prosecution; rather, "the threat to the plaintiff's federally protected rights must be one that cannot be eliminated by his defense against a single criminal prosecution."[90] Fitting circumstances include valid claims of double jeopardy[91] and when a statute is "flagrantly and patently violative of express constitutional prohibitions in every clause, sentence and paragraph, and in whatever manner and against whomever an effort might be made to apply it."[92]

In this case, Lightfoot complains of an inconvenient effect incidental to prosecution: the exposure of one's private business to a public forum. Regarding bank records in particular, it is not uncommon for the government to subpoena bank records to use in court; in fact, both Louisiana and federal law address that exact situation.[93] This is not the case where a defense in state court could not lessen the harm. A defendant can

---

[87] *See id.* at p. 11.
[88] *Kugler v. Helfant*, 421 U.S. 117, 124 (1975).
[89] *Id.* at 125
[90] *Younger*, 401 U.S. at 46.
[91] *Gates*, 885 F.3d at 882.
[92] *Younger*, 401 U.S. at 53-54.
[93] 15 U.S.C. § 6802(e)(8); La. Rev. Stat. § 6:333(F)(6), (11), (13).

move to exclude prejudicial evidence.[94] In this case, as explained above, Lightfoot's defense counsel objected to the admission of his bank records and even appealed the trial court's decision. It is irrelevant that not all of Lightfoot's objections were raised by his attorney because he had the opportunity to raise them, and there is no indication that the state courts were "incapable of fairly and fully adjudicating" the issues.[95] Lightfoot has not shown extraordinary circumstances warranting the Court's consideration of Lightfoot's claims for injunctive and declaratory relief. For these reasons, *Younger* abstention bars the Court from considering Lightfoot's claims for injunctive and declaratory relief, and these claims are dismissed without prejudice. As explained above, however, *Younger* abstention does not bar the Court from considering Hawkins' and Thompson's claims for injunctive and declaratory relief.

### 2. Plaintiffs Have Failed to State a Claim for Their Remaining Federal Law Claims, Which Are Dismissed with Prejudice.

#### a. Hawkins and Thompson's Claims for Declaratory and Injunctive Relief

Because the Court should not abstain from addressing Hawkins and Thompson's claims for declaratory and injunctive relief under *Younger*, the Court addresses them here. Hawkins and Thompson ask the Court to enjoin Defendants from using the 404(B) bad acts evidence obtained from the Union in the ongoing prosecution against Lightfoot in Orleans Parish under 42 U.S.C. § 1983, alleging violations of the Fourth and Sixth Amendments, as incorporated against the states by the Fourteenth Amendment, as well as violations of various state law privacy rights, including article I, section 5, of the Louisiana Constitution; La. Rev. Stat. §§ 6:333 and 9:3571; and Louisiana Code of Civil

---

[94] La. Code. Evid. § 403; s*ee, e.g.*, *Louisiana v. Thibodeaux*, 2016-542, at 4-5 (La. App. 3 Cir. 3/15/17); 216 So. 3d 73, 78 (noting the state was to redact certain information from evidence).
[95] *See* Kugler, 421 U.S. at 124.

Procedure article 1469.2. Section 1983 "is not itself a source of substantive rights, but a method for vindicating *federal* rights elsewhere conferred by those parts of the United States Constitution and federal statutes that it describes."[96] Hawkins and Thompson invoke Section 1983 for several alleged violations of Louisiana law, namely article I, section 5, of the Louisiana Constitution; Louisiana Revised Statutes Sections 6:333 and 9:3571; and Louisiana Code of Civil Procedure article 1469.2. Because these are state, not federal law, they must be dismissed. However, Hawkins and Thompson's claims under the Fourth and Sixth Amendments, as incorporated against the states by the Fourteenth Amendment, are cognizable under Section 1983.

Additionally, Hawkins and Thompson seek a declaratory judgment that Defendants violated 42 U.S.C. § 1985(2) by conspiring with the Union and its employees to deny them equal protection of laws.

The Court will, accordingly, address Hawkins' and Thompson's Fourth Amendment claim, Sixth Amendment claim, and 42 U.S.C. § 1985(2) claim.

### 3.  Fourth Amendment

The Fourth Amendment protects against "unreasonable searches and seizures."[97] Generally, "[t]he Government [is] able to use subpoenas to acquire records [from third parties] in the overwhelming majority of investigations," but "a warrant is required in the rare case where the suspect has a legitimate privacy interest in records held by a third party."[98] In *United States v. Miller*, the Supreme Court held that a defendant had no expectation of privacy in bank records obtained by subpoena because "[a]ll of the documents obtained, including financial statements and deposit slips, contain[ed] only

---

[96] *Baker v. McCollan*, 443, U.S. 137, 144 n.3 (1979).
[97] U.S. Const. amend. IV.
[98] *Carpenter v. United States*, 138 S. Ct. 2206, 2222 (2018).

information voluntarily conveyed to the banks and exposed to their employees in the ordinary course of business."[99] "The depositor takes the risk, in revealing his affairs to another," the Court said, "that the information will be conveyed by that person to the Government."[100] This is the case "even if the information is revealed on the assumption that it will be used only for a limited purpose and the confidence placed in the third party will not be betrayed."[101] In this case, Hawkins and Thompson allege that Defendants obtained their bank records without a warrant or probable cause.[102] However, the records turned over to Defendants through the subpoena were all "voluntarily conveyed to the bank[] and exposed to [its] employees" in the effort to obtain loans.[103] Accordingly, as in *Miller*, Hawkins and Thompson have no expectation of privacy in the bank records turned over to Defendants. Their Fourth Amendment claim must be dismissed with prejudice.

### 4.    Sixth Amendment

The Sixth Amendment states in relevant part:

> In all criminal prosecutions, the accused shall enjoy the right to a speedy and public trial, by an impartial jury of the State and district wherein the crime shall have been committed . . . to be informed of the nature and cause of the accusation; to be confronted with the witnesses against him; . . . and to have the Assistance of Counsel for his defence.

Hawkins and Thompson take issue with the 404(B) bad acts evidence that Defendants intend to use at Lightfoot's trial, which impliedly associates them with an "auto loan shopping scam."[104] They allege that they never received "reasonable notice" of these "criminal charges," were not "afforded an opportunity to be heard in their defense," were

---

[99] *United States v. Miller*, 425 U.S. 435, 442 (1976). The Court recently reaffirmed the holding in *Miller* in *Carpenter v. United States*. 138 U.S. at 2221-22.
[100] *Id.* at 443.
[101] *Id.*
[102] R. Doc. 57, ¶ 123.
[103] *See Miller*, 425 U.S. at 442; R. Doc. 57, ¶¶ 21-24.
[104] R. Doc. 57, ¶ 33.

not afforded an opportunity to "offer testimony," and were not "represented by counsel."[105] However, it is well-settled that the Sixth Amendment only applies to one "accused" by "a formal indictment or information or else the actual restraints imposed by arrest and holding to answer a criminal charge."[106] In this case, Hawkins and Thompson allege they were "never arrested, never charged."[107] Therefore, the Sixth Amendment does not apply. Hawkins and Thompson's Sixth Amendment claim must be dismissed. Because Hawkins and Thompson failed to state a valid claim under the Fourth and Sixth Amendments, their claim for injunctive relief under Section 1983 must be dismissed with prejudice.

### 5.    Section 1985(2)

Hawkins and Thompson seek a declaratory judgment that Defendants violated 42 U.S.C. § 1985(2) by conspiring with the Union and its employees to deny them equal protection of laws. The first portion of Section 1985(2) concerns federal judicial proceedings.[108] The second part of Section 1985(2), however, applies to conspiracies to obstruct the course of justice in state courts.[109] The Court construes Plaintiffs' allegations as invoking the second part of Section 1985(2). The second part of Section 1985(2) "describe[s] conspiracies designed to interfere with the equal protection of the laws."[110] The language requiring intent to deprive one of equal protection of the laws means that there must be some racial or otherwise class-based discriminatory animus behind the

---

[105] *Id.*

[106] *Dilingham v. United States*, 549 U.S. 64, 65 (1975); *see also United States v. Garcia*, 995 F.2d 556, 560 (5th Cir. 1993) ("The Sixth-Amendment . . . attaches at the time of arrest or indictment."); United *States v. Costanza*, 549 F.2d 1126, 1132 (8th Cir. 1977) ("[T]he sixth amendment's concept of an 'accused' person is limited to a person who has actually been charged with a crime or who has been taken into custody pending the filing of formal charges.").

[107] R. Doc. 57, at p. 10.

[108] *Kush v. Rutledge*, 460 U.S. 719, 724

[109] *Id.* at 725.

[110] *Bradt v. Smith*, 634 F.2d 796, 801 (5th Cir. 1981).

conspirators' actions.[111] Hawkins and Thompson fail to allege racial or otherwise class-based discriminatory animus in their 60-page third amended complaint.[112] Accordingly, the Court finds that Plaintiffs fail to state a claim under Section 1985(2). Hawkins and Thompson's claim for declaratory relief under Section 1985(2) must be dismissed with prejudice.

## a.   Plaintiffs' Federal-law Claims for Monetary Damages Against Defendants Individually

Plaintiffs claim damages from Cannizzaro and Gaudin in their individual capacities under 42 U.S.C. §§ 1983, 1985(2)-(3), 1986 for alleged violations of the Plaintiffs' Fourth and Sixth Amendment rights as well as conspiring or failing to stop a conspiracy to deprive them of equal protection of law. Plaintiffs allege that Defendants wrongfully obtained Plaintiffs' bank records after Lightfoot's indictment from the Union through conversations and a subpoena duces tecum that Defendants plan to use at bad act character evidence in Lightfoot's upcoming trial.[113]

Sections 1983, 1985, and 1986 all embrace traditional notions of immunity.[114] Under these notions, prosecutors are absolutely immune from liability for certain conduct.[115] The Supreme Court has developed a "functional test under which prosecutors are absolutely immune with respect to activities that are 'intimately associated with the

---

[111] *Griffin v. Breckenridge*, 403 U.S. 88, 91 (1971); *Bradt*, 634 F.2d at 801.

[112] *See generally* R. Doc. 57.

[113] Defendants state in their motion that Plaintiffs also seek damages for Defendants' alleged use of perjurious statements in obtaining Lightfoot's indictment. R. Doc. 67-1, at p. 20. However, Plaintiffs state in their third amended complaint that they do not seek relief for those allegations. R. Doc. 57, ¶ 58 ("Lightfoot filed a pro se motion in case number 526-754, Section "L" of Orleans Parish Criminal Court seeking a hearing to recuse the Orleans Parish District Attorney's Office from the criminal action alleging . . . known false or perjured testimony before two Louisiana grand juries . . . . Relief of these actions are [sic] not sought in this complaint.").

[114] *See, e.g.*, *Mylett v. Mullican*, 992 F.2d 1347, 1352 (5th Cir. 1993); *Cousins v. Small*, 325 F.3d 627, 631 (5th Cir. 2003); *Moffett v. Bryant*, No. 08−CV−1337, 2009 WL 2448146, at *6 (W.D. La. Aug. 6, 2009); *Bolling v. Hood*, No. 1:10cv189−LG−RHW, 2010 WL 5060471, at *2 (S.D. Miss. Dec. 6, 2010).

[115] *Cousins*, 325 F.3d at 631.

judicial phase of the criminal process.'"[116] "Conduct falling within this category is not limited 'only to the act of initiation itself and to conduct occurring in the courtroom,' but instead includes all actions 'which occur in the course of [the prosecutor's] role as an advocate for the State.'"[117] "Therefore, the central question . . . is the nature of the conduct upon which the claim is based. If the conduct is advocatory, and therefore related to the defendants' prosecutorial function, absolute immunity applies."[118]

A prosecutor can still act as an advocate in gathering evidence: "[p]reparation . . . for a trial[] may require the *obtaining*, reviewing, and evaluating of evidence."[119] When the claim focuses on how prosecutors gathered evidence, the act is generally advocational if it was "intended to secure evidence that would be used in the presentation of the state's case at the pending trial of an already identified suspect, not to identify a suspect or establish probable cause."[120] Thus, "the existence of probable cause with respect to a particular suspect is a significant factor to be used in evaluating the advocatory nature of prosecutorial conduct."[121]

However, "the timing of a prosecutor's actions" in relation to probable cause is not a controlling factor.[122] While it is useful in determining when a prosecutor begins advocating for the state, the real test is "function the prosecutor was performing."[123] For example, in *Singleton v. Cannizzaro*, the Fifth Circuit held that prosecutors who independently issued fake subpoenas to witnesses in order to compel them to participate

---

[116] *Id.* at 631-32 (quoting *Imbler v. Pachtman*, 424 U.S. 409, 430 (1976)).
[117] *Id.* at 632 (citation omitted) (quoting *Buckley v. Fitzsimmons*, 509 U.S. 259, 272-73 (1993)).
[118] *Id.*
[119] *Id.* at 633 n.6 (first alteration in original) (quoting *Imbler*, 424 U.S. at 431 n.33).
[120] *Id.* at 635.
[121] *Id.* at 633.
[122] *Singleton v. Cannizzaro*, 956 F.3d 773, 783 (5th Cir. 2020).
[123] *See id.*

in interviews with prosecutors were not entitled to absolute immunity, even though these subpoenas were issued after charges were filed against identified defendants.[124] The court focused on the prosecutors' function in the criminal justice process: they acted independently by issuing these fake subpoenas themselves and "intentionally avoided the judicial process that Louisiana law requires for obtaining subpoenas."[125] These interviews were more akin to investigations by police, separate from the judicial process, than to advocacy in court.[126] Moreover, the prosecutors met with these witnesses out of court with "no[] . . . intent to use [their] testimony in the pending trial," which again separated their actions from their role as advocates in court.[127]

In this case, Defendants requested the subpoenas after Lightfoot was identified as a suspect and indicted.[128] Gaudin intended to use bad acts character evidence at Lightfoot's trial.[129] While he had an unsigned summary of the Union's internal investigation into Plaintiffs for fraud, Gaudin needed Plaintiffs' bank records as more reliable evidence.[130] At a pretrial hearing before the trial judge, Gaudin properly sought a subpoena duces tecum for these records from the judge, who executed it.[131] Gaudin's acts are clearly advocational. He was seeking records that he already knew of to use against an identified and indicted defendant in the state's case. Unlike in *Singleton*, Gaudin sought these records through the proper avenues by asking the trial judge to execute a subpoena duces tecum, and he had a clear intent to use them in his advocacy for the state at

---

[124] *Id.* at 783-84.
[125] *Id.* at 784.
[126] *Id.*
[127] *See id.* at 782 n.5, 783.
[128] R. Doc. 57, ¶ 25.
[129] *Id.* ¶ 41.
[130] *Id.* ¶ 42.
[131] *Id.*

Lightfoot's trial. For these reasons, the Court finds that Gaudin's acts were advocational. Therefore, Defendants are entitled to absolute immunity for Plaintiffs' claims against them stemming from the subpoena duces tecum.[132] The federal law claims for monetary damages brought against Cannizzaro and Gaudin in their individual capacity are dismissed with prejudice.

### E.    Plaintiffs' State-law Claims Are Dismissed Without Prejudice

Plaintiffs also assert various state law claims against Defendants. Having dismissed each of Plaintiffs' federal claims, the Court declines to exercise supplemental jurisdiction over Plaintiffs' state law claims. District courts have discretion not to exercise supplemental jurisdiction over a claim when all claims over which the court had original jurisdiction have been dismissed.[133] Although the "'general rule' is to decline to exercise jurisdiction over pendent state-law claims" under such circumstances, the "rule is neither mandatory nor absolute."[134] Rather, a court must consider "both the statutory provisions of 28 U.S.C. § 1367(c) and the balance of the relevant factors of judicial economy, convenience, fairness, and comity."[135] Having considered the applicable law, the complexity of Plaintiffs' remaining

---

[132] It is unclear whether Plaintiffs seek damages from Defendants in their official capacities, as when the Third Amended Complaint states its claims for damages, it lists only Gaudin and Cannizaro's names, without naming a capacity. Absolute immunity would not bar claims against Gaudin and Cannizaro in their official capacities. *Singleton*, 956 F.3d at 778 n.3. The Court construes Defendants' motion to dismiss as seeking to dismiss any official capacity claims for damages as well. *See* R. Doc. 67 at 3-4 (stating Gaudin and Cannizaro were sued in their individual and official capacities and seeking to dismiss the Third Amended Complaint in its entirety). Plaintiffs have failed to allege the requirements for a claim for damages under *Monell v. Department of Social Services*, 436 U.S. 658 (1978), including a policy, practice, or regulation that caused their constitutional injuries.

[133] 42 U.S.C. § 1367(c)(3). 42 U.S.C. § 1367(c) reads:

> The district courts may decline to exercise supplemental jurisdiction over a claim under subsection (a) if:
> (1) the claim raises a novel or complex issue of State law, (2) the claim substantially predominates over the claim or claims over which the district court has original jurisdiction, (3) the district court has dismissed all claims over which it has original jurisdiction, or (4) in exceptional circumstances, there are other compelling reasons for declining jurisdiction.

[134] *Batiste v. Island Records Inc.*, 179 F.3d 217, 227 (5th Cir. 1999) (quoting *McClelland v. Gronwaldt*, 155 F.3d 507, 519 (5th Cir. 1998)).

[135] *Id.* (citations omitted).

state law claims, and the fact that the trial of this matter has not yet been set, the Court declines to exercise supplemental jurisdiction over these claims and dismisses Plaintiff's remaining state law claims without prejudice.[136]

## IV.   Conclusion

For the foregoing reasons,

**IT IS ORDERED** that Defendants', Jason Williams in his official capacity as Orleans Parish District Attorney, Leon Cannizzaro, Jr. in his individual capacity, and Andre C. Gaudin, Jr. in his official and individual capacities, Motion to Dismiss[137] is **GRANTED**.

**IT IS FURTHER ORDERED** that Plaintiffs' claims against Andre C. Gaudin, Jr. in his official capacity are **DISMISSED WITH PREJUDICE**.

**IT IS FURTHER ORDERED** that Plaintiffs' claims against "all Defendants" are **DISMISSED WITHOUT PREJUDICE** as the claims are impermissibly vague.

**IT IS FURTHER ORDERED** that Plaintiffs lack standing to bring criminal charges under Louisiana statutes against Cannizaro and Gaudin and these claims are **DISMISSED WITHOUT PREJUDICE** for lack of standing.

**IT IS FURTHER ORDERED** that Lightfoot's claims for injunctive and declaratory relief against Cannizaro and Gaudin in their individual capacities and Williams in his official capacity are **DISMISSED WITHOUT PREJUDICE**.

---

[136] *See Carnegie-Mellon Univ. v. Cohill*, 484 U.S. 343, 350 n.7 (1988) (stating that "in the usual case in which all federal-law claims are eliminated before trial, the balance of factors to be considered under the pendent jurisdiction doctrine . . . will point toward declining to exercise jurisdiction over the remaining state-law claims"); *Batiste v. Island Records, Inc.*, 179 F.3d 217, 227 (5th Cir. 1999) (reversing the district court for declining to retain supplemental jurisdiction over the state law claims that remained following the district court's grant of summary judgment on all of the plaintiff's federal claims because "the remaining [state law] claims d[id] not involve any 'novel or complex' issues of state law," and "[t]he case had been pending in the district court for almost three years"). The Court dismisses without prejudice all of Plaintiffs' remaining state law claims against each Defendant in this case.
[137] R. Doc. 67.

**IT IS FURTHER ORDERED** that Hawkins and Thompson's federal-law claims for injunctive and declaratory relief against Cannizaro and Gaudin in their individual capacities and Williams in his official capacity are **DISMISSED WITH PREJUDICE**.

**IT IS FURTHER ORDERED** that Plaintiffs' federal-law claims for damages against Cannizaro and Gaudin in their individual capacities and Williams in his official capacity are **DISMISSED WITH PREJUDICE**.

**IT IS FURTHER ORDERED** that Plaintiffs' remaining state-law claims against Cannizzaro and Gaudin in their individual capacities and Williams in his official capacity are **DISMISSED WITHOUT PREJUDICE** as the Court declines to exercise its supplemental jurisdiction over these claims.

**New Orleans, Louisiana, this 16th day of March, 2023.**

**SUSIE MORGAN**
**UNITED STATES DISTRICT JUDGE**

**Clerk to Notify via Mail**:

Geralyn Hawkins
500 South Starrett Road
New Orleans, LA 70123

Chad Lightfoot #301162
Orleans Parish Justice Center
I.D. #2516543
300 Perdido Street
New Orleans, LA 70119

Nicole Thompson
P.O. Box 1472
Kenner, LA 70063

**Clerk to Notify via E-Mail:**

Geralyn Hawkins
geralynhawkins@yahoo.com