## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| **GERALYN HAWKINS, ET AL.,**<br>     **Plaintiffs** | **CIVIL ACTION** |
| **VERSUS** | **NO.  19-13323** |
| **SHELLY SANDERS, ET AL.,**<br>     **Defendants** | **SECTION: "E" (1)** |

## <u>ORDER AND REASONS</u>

Before the Court is Defendants', Greater New Orleans Federal Credit Union, Heather Rodgers, Shelly Sanders and Gerry Kish, Motion to Dismiss.[1] Plaintiffs oppose the motion,[2] and Defendants have filed a reply.[3] Having reviewed the pleadings and the case law, the Court rules as follows.

## I.    Background[4]

Plaintiffs Geralyn Hawkins, Nichole Thompson, and Chad Lightfoot (sometimes referred to collectively as "Plaintiffs") sue numerous defendants, captioning their complaint as a "Civil Rights Complaint 42 U.S.C. Section 1983; 1985; and 1986." Plaintiffs' claims stem from a pending criminal proceeding against Lightfoot for perjury, RICO theft, and RICO identity fraud in Louisiana state criminal court.[5]  Lightfoot has a criminal and civil history in Louisiana federal and state courts dating back to 1996.[6]

---

[1] R. Doc. 88.

[2] R. Doc. 142.

[3] R. Doc. 144.

[4] The following allegations are based on the third amended complaint. R. Doc. 57.

[5] R. Doc. 57 at ¶ 56.

[6] *See, e.g., United States v. Lightfoot*, Civ. A. No. 17-00274, 2018 WL 5269827 (W.D. La. Oct. 22, 2018) ("Lightfoot is charged in the Indictment [Doc. No. 1] with one count of Fraud Scheme in Connection with Major Disaster or Emergency Benefits, in violation of 18 U.S.C. § 1040(a)(2)."), *affirmed*, 809 F. App'x. 246 (5th Cir. 2020); *Lightfoot v. Corrections Corp. of Am.*, 101 F.3d 699 (5th Cir. 1996) (barring Lightfoot from filing any civil lawsuit as a pauper within the jurisdiction of the Fifth Circuit).

Hawkins, Thompson, and Lightfoot obtained personal loans in 2010 from Defendant Greater New Orleans Federal Credit Union ("the Union").[7] To apply for the loans, Plaintiffs submitted personal and/or private information to the Union, such as their places of employment, social security numbers, and drivers' license information.[8] In 2012, the Union conducted an internal investigation of numerous loans when it became suspicious because many of the loan applicants had the same information, such as addresses or job information.[9] Plaintiffs' loans were among those investigated.[10] Defendants Shelly Sanders, Heather Rodgers, and Gerry Kish, employees of the Union, assisted with the investigation.[11] Ultimately, Louisiana authorities accused Plaintiffs of participating in an "auto loan shopping scam" and fraud against the Union, and Lightfoot was arrested on October 15, 2015 and later charged with one count of perjury, one count of RICO identity theft, and one count of fraud.[12]

Plaintiffs filed this lawsuit in October 2019.[13] Plaintiffs sue Defendants the Union, Sanders, Rodgers, and Kish for violating their constitutional rights by conducting the investigation of their personal information without their consent.[14]  They also sue these Defendants for communicating these findings to District Attorney's Office ("DA")  and later complying with a subpoena from Orleans Parish Criminal Court that ordered the

---

[7] R. Doc. 57 at ¶¶ 20-21, 23.

[8] *Id.* at ¶¶ 22, 24.

[9] *Id.* at ¶ 26.

[10] *Id.* at ¶ 27-29.

[11] *Id.* at ¶¶ 26-28.

[12] *Id.* at ¶¶ 25, 32-33. In the third amended complaint, Plaintiffs allege that multiple grand juries were convened, multiple indictments issued against Lightfoot on various charges that were later dismissed when the later grand jury superseded those charges, and Lightfoot was arrested no fewer than four times. *Id.* at pp. 4-5. It appears that the three charges noted above are now the only charges pending as of the date of filing the third amended complaint.

[13] R. Doc. 1.

[14] R. Doc. 57 at ¶ 33.

production of Plaintiffs' personal information.[15]  They also accuse the Union, Sanders, Rodgers, and Kish of conspiring with the DA under 42 U.S.C. § 1985 to falsely accuse them of participating in the "auto loan shopping scam"[16] and to deny them equal protection and due process of law as well as failing to prevent such a conspiracy under 42 U.S.C. § 1986.[17] Plaintiffs further allege that Union, Sanders, Rodgers, and Kish committed fraud and defamation against Plaintiffs by turning over their internal investigation, which linked Plaintiffs to the commission of several crimes.[18] Plaintiffs arguably allege nebulous violations of the First, Fourth, Fifth, Eighth, and Fourteenth Amendments; various provisions of the Louisiana Constitution; the Privacy Act, 5 U.S.C. 552a; 42 U.S.C. § 1983; Louisiana's Unfair Trade Practices and Consumer Protection Law, La. Rev. Stat. § 51:1401 *et seq.*;[19] and La. Rev. Stat. §§ 6:333 and 9:3571. Finally, Plaintiffs ask this Court to charge Defendants with criminal violations of various Louisiana statutes under 42 U.S.C. § 1983.

Plaintiffs also sue the City of New Orleans,[20] former District Attorney Leon Cannizzaro, Jr. and Assistant District Attorney Andre Gaudin for fabricating evidence to support the criminal allegations against Plaintiffs and for bad faith prosecution.[21] Plaintiffs also sue former Orleans Parish Criminal Court Judge Franz Zibilich; Jan Schmidt and Dawn Plaisance, two court reporters; and the Rules of the Court Committee

---

[15] *Id.* at ¶ 45.

[16] *Id.* at ¶ 39.

[17] *Id.* at ¶¶ 44, 121.

[18] *Id.* at ¶¶ 50, 91, 117.

[19] Plaintiffs cite repeatedly to the "Consumer Rights Act" allegedly contained at 51 U.S.C. § 1401. *See, e.g.*, R. Doc. 57 at 2, ¶¶ 42, 90. There does not appear to be a section 1401 in title 51 of the United States Code, and in fact title 51 is entitled "National and Commercial Space Programs." However, section 1401 of title 51 of the Louisiana Revised Statutes is the short title for Louisiana's Unfair Trade Practices and Consumer Protection Law. Because the Court "give[s] *pro se* briefs a liberal construction," the Court construes Plaintiffs' citation to 51 U.S.C. § 1401 as a claim under Louisiana's Unfair Trade Practices and Consumer Protection Law. *Brown v. Sudduth*, 675 F.3d 472, 477 (5th Cir. 2012).

[20] R. Doc. 57.

[21] R. Doc. 57 at ¶¶ 32-44.

of Orleans Parish Criminal Court ("the Rules Committee"). Plaintiffs sue these four Defendants for failing to turn over a transcript of a hearing in violation of an order issued by Judge Arthur Hunter when Hunter was considering Lightfoot's motion to recuse Zibilich from his criminal case and for Zibilich's rulings against Lightfoot in that criminal action.[22]

Defendants the Union, Sanders, Rodgers, and Kish ("Defendants") now move to dismiss Plaintiffs' claims against them under Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6).[23]

## II.    Legal Standard

### A.    Rule 12(b)(1)

Federal courts are courts of limited jurisdiction; without jurisdiction conferred by statute, they lack the power to adjudicate claims."[24] A motion to dismiss under Federal Rules of Civil Procedure 12(b)(1) challenges a federal court's subject-matter jurisdiction.[25] Under Rule 12(b)(1), "[a] case is properly dismissed for lack of subject matter jurisdiction when the court lacks the statutory or constitutional power to adjudicate the case."[26] "Lack of subject-matter jurisdiction may be found in the complaint alone, the complaint supplemented by the undisputed facts as evidenced in the record, or the complaint supplemented by the undisputed facts plus the court's resolution of the disputed facts."[27] "When, as here, grounds for dismissal may exist under both Rule 12(b)(1) and Rule

---

[22] *Id.* at ¶¶ 62-83.
[23] R. Doc. 88.
[24] *In re FEMA Trailer Formaldehyde Products Liab. Litig. (Mississippi Plaintiffs)*, 668 F.3d 281, 286 (5th Cir. 2012).
[25] *See* Fed. R. Civ. P. 12(b)(1).
[26] *Home Builders Ass'n of Miss., Inc. v. City of Madison, Miss.*, 143 F.3d 1006, 1010 (5th Cir. 1998) (internal quotation marks and citation omitted).
[27] *In re FEMA*, 668 F.3d at 287.

12(b)(6), the Court should, if necessary, dismiss only under the former without reaching the question of failure to state a claim."[28]

### B.    Rule 12(b)(6)

Pursuant to Federal Rule of Civil Procedure 12(b)(6), a district court may dismiss a complaint, or any part of it, for failure to state a claim upon which relief may be granted if the plaintiff has not set forth factual allegations in support of his claim that would entitle him to relief.[29] "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"[30] "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."[31] The court, however, does not accept as true legal conclusions or mere conclusory statements, and "conclusory allegations or legal conclusions masquerading as factual conclusions will not suffice to prevent a motion to dismiss."[32] "[T]hreadbare recitals of elements of a cause of action, supported by mere conclusory statements" or "naked assertion[s] devoid of further factual enhancement" are not sufficient.[33]

In summary, "[f]actual allegations must be enough to raise a right to relief above the speculative level."[34] "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not

---

[28] *Valdery v. Louisiana Workforce Comm'n*, No. CIV.A. 15-01547, 2015 WL 5307390, at *1 (E.D. La. Sept. 10, 2015).
[29] *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007); *Cuvillier v. Taylor*, 503 F.3d 397, 401 (5th Cir. 2007).
[30] *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Twombly*, 550 U.S. at 570).
[31] *Id.*
[32] *S. Christian Leadership Conf. v. Sup. Ct. of the State of La.*, 252 F.3d 781, 786 (5th Cir. 2001) (citing *Fernandez-Montes v. Allied Pilots Ass'n*, 987 F.2d 278, 284 (5th Cir. 1993)).
[33] *Iqbal*, 556 U.S. at 663, 678 (citations omitted).
[34] *Twombly*, 550 U.S. at 555.

show[n]'—that the pleader is entitled to relief."[35] "Dismissal is appropriate when the complaint 'on its face show[s] a bar to relief.'"[36]

## III.   Legal Analysis

### A.   Claims Against "All Defendants" Are Dismissed Without Prejudice

In numerous paragraphs of the third amended complaint, Plaintiffs allege that "all named Defendants," "all Defendants," or "named Defendants" violated their constitutional or statutory rights.[37] Mere "conclusory allegations against [d]efendants as a group" that "fail[ ] to allege the personal involvement of any defendant" are insufficient to put Defendants on notice of their alleged wrongdoing.[38] A plaintiff must allege facts that "establish each individual [d]efendant's liability for the misconduct alleged."[39] When a number of defendants are named in a complaint, a plaintiff cannot refer to all defendants "who occupied different positions and presumably had distinct roles in the alleged misconduct" without specifying "which defendants engaged in what wrongful conduct."[40] A complaint that contains "impermissibly vague group pleading" will be dismissed.[41]

Accordingly, the claims against "all named Defendants," "all Defendants," or "named Defendants," including the Union, Sanders, Rodgers, and Kish as Defendants, are

---

[35] *Id.* (quoting Fed. R. Civ. P. 8(a)(2)).
[36] *Cutrer v. McMillan*, 308 F. App'x 819, 820 (5th Cir. 2009) (per curiam) (quotations omitted).
[37] *See, e.g*, R. Doc. 57 at ¶¶ 18, 85-88, 90, 92, 95, 125.
[38] *Galicki v. New Jersey*, No. 14-169, 2015 WL 3970297, at *2 (D.N.J. June 29, 2015) (dismissing plaintiffs' claims without prejudice for failure to provide each defendant with notice of its alleged participation in the racketeering enterprise).
[39] *Id.*; *see also Ashcroft v. Iqbal*, 556 U.S. 662, 676 (2009) (finding that a plaintiff must plead that each Government-official defendant, through the official's own individual actions, has violated the Constitution); *Aruanno v. Main*, 467 F. App'x 134, 137-38 (3d Cir. 2012) (dismissal of § 1983 action was appropriate where Defendants were collectively sued as "[government] personnel" and failed to allege the personal involvement of the individual Defendants).
[40] *Falat v. County of Hunterdon*, No. 12-6804, 2013 WL 1163751, at *3 (D.N.J. Mar. 19, 2013).
[41] *Id.*

dismissed without prejudice for impermissible group pleading and failing to specify how the Union, Sanders, Rodgers, and Kish specifically violated Plaintiffs' rights.[42] However, when the Plaintiffs referenced any of these claims elsewhere in their third amended complaint specifically against the Defendants, these claims are addressed below.

### B. Plaintiffs Lack Standing to Request Criminal Charges Against Defendants

Plaintiffs request the Court invoke its "pendent/supervisory jurisdiction" under 42 U.S.C. § 1983 to charge Defendants with criminal violations of various Louisiana statutes.[43]  As the Court has stated before, this is beyond its authority and jurisdiction.[44] "Section 1983 and *Bivens* actions are available to seek damages and injunctive relief. They are not avenues for private citizens to bring criminal charges."[45] "[A] private citizen lacks a judicially cognizable interest in the prosecution or nonprosecution of another."[46] Because Plaintiffs lack standing to bring criminal charges against Defendants, these claims must be dismissed without prejudice.

### C. The Federal Law Claims Against Defendants Are Dismissed with Prejudice

Plaintiffs' remaining federal law claims against Defendants include alleged violations of the Privacy Act, 5 U.S.C. 552a, as well as 42 U.S.C. §§ 1985, 1986 for conspiring to deny them equal protection under the law, or to prevent a conspiracy to do so. Plaintiffs also claim the Union violated 42 U.S.C. § 1983 by failing to properly discipline Sanders, Rodgers, and Kish for conspiring to violate Plaintiffs' Fourth, Fifth,

---

[42] These claims are dismissed as to all Defendants in this lawsuit for the same reasons, notwithstanding that this Order and Reasons addresses only the Union, Rodgers, Sanders and Gerry Kish's motion to dismiss.
[43] R. Doc. 57 at ¶¶ 96-111.
[44] R. Doc. 148.
[45] *Banks v. Gillie*, No. 03-3098, 2004 U.S. Dist. LEXIS 5413, at *20 (E.D. La. Feb. 25, 2004).
[46] *See Linda R.S. v. Richard D.*, 410 U.S. 614, 619 (1973).

Sixth, Eighth, and Fourteenth Amendment rights. Finally, Plaintiffs ask for a declaratory judgment that the Union violated their Fourth, Fifth, Sixth, and Fourteenth Amendment rights.

In their motion to dismiss and their reply, Defendants maintain this Court lacks subject matter jurisdiction and should dismiss Plaintiffs' claims under Rule 12(b)(1) because Plaintiffs have no Article III standing, lacking an injury in fact. Defendants argue that under *United States v. Miller*,[47] Plaintiffs have no constitutionally protected right of privacy in their bank records. Without a right to privacy in their bank records, Defendants contend, Plaintiffs lack standing to challenge a bank's disclosure to government authorities.  Citing 15 U.S.C. § 6802 and Louisiana Revised Statute § 6:333, Defendants argue even when Congress and the Louisiana Legislature have created a right to privacy in bank records, the legislative bodies have created exceptions to the disclosure laws for judicial process.   Citing the exceptions of judicial process to the disclosure laws, Defendants contend that Plaintiffs cannot state a plausible claim for relief under Rule 12(b)(6) as the exception protects them from liability for any disclosure.[48] They also argue that Plaintiffs' allegations are conclusory and lack factual support.

Plaintiffs maintain they have standing because Defendants released their personal banking and loan information to the government, information subsequently filed on the record in a public forum, thereby exposing Plaintiffs' personal information to identity

---

[47] 425 U.S. 435 (1976).

[48] Defendants also maintain that Plaintiffs have no standing because Lightfoot was ultimately arrested, tried, found guilty on all counts by a jury, and the Louisiana Fourth Circuit Court of Appeal has upheld the jury's finding. *See State v. Lightfoot*, – So.3d –, 2018 WL 6536999 (La. Ct. App. 2019). Given Lightfoot's history with the Louisiana justice system, however, the parties have failed to clearly discuss which of Lightfoot's arrests and charges they discuss.  In the case relied on by Defendants in their reply, Lightfoot was arrested in 2016. However, in this action, Lightfoot challenges his 2015 arrest for charges that appear to be still pending against him as of the date of filing the third amended complaint.

theft and constituting an invasion of privacy.  Citing the exceptions to the disclosure laws for judicial process, Plaintiffs maintain they do not apply under the particular circumstances of this action.   Plaintiffs also maintain the Orleans Parish DA exceeded its investigatory jurisdiction because the Union is located in Metairie, Louisiana, outside the jurisdiction of Orleans Parish. Plaintiffs assert they have stated a plausible claim for relief because the third amended complaint outlines in detail what Defendants did and what documents Defendants produced. They maintain their third amended complaint is not conclusory, and it puts Defendants on notice of the claims against them.

### 1.    Standing

Standing to sue is a doctrine rooted in the traditional understanding of a case or controversy.[49] The doctrine developed to ensure federal courts do not exceed their authority as it has been traditionally understood.[50] The doctrine limits the category of litigants empowered to maintain a lawsuit in federal court to seek redress for a legal wrong.[51]

The Supreme Court has established that the "irreducible constitutional minimum" of standing consists of three elements.[52] The plaintiff must have (1) suffered an injury in fact, (2) that is fairly traceable to the challenged conduct of the defendant, and (3) that is likely to be redressed by a favorable judicial decision.[53] Injury in fact is a constitutional requirement, and "[i]t is settled that Congress cannot erase Article III's standing requirements by statutorily granting the right to sue to a plaintiff who would not

---

[49] *Spokeo, Inc. v. Robins*, 578 U.S. 856 (2016).
[50] *See id.* at 820.
[51] *See Valley Forge Christian Coll. v. Americans United for Separation of Church & State, Inc.*, 454 U.S. 464, 473 (1982); *Warth v. Seldin*, 422 U.S. 490, 498-499 (1975).
[52] *Lujan v, Defenders of Wildlife*, 504 U.S. 555, 560 (1992).
[53] *Id.* at 560−561.

otherwise have standing."[54]

To establish injury in fact, a plaintiff must show that he or she suffered "an invasion of a legally protected interest" that is "concrete and particularized" and "actual or imminent, not conjectural or hypothetical."[55] For an injury to be "particularized," it "must affect the plaintiff in a personal and individual way."[56] A "concrete" injury must be "de facto"; that is, it must actually exist.[57] "Concrete" is not, however, necessarily synonymous with "tangible."[58] The Supreme Court has held that an intangible harm may constitute a concrete injury.[59] The Court has held:

> Congress' role in identifying and elevating intangible harms does not mean that a plaintiff automatically satisfies the injury-in-fact requirement whenever a statute grants a person a statutory right and purports to authorize that person to sue to vindicate that right. Article III standing requires a concrete injury even in the context of a statutory violation. For that reason, Robins could not, for example, allege a bare procedural violation, divorced from any concrete harm, and satisfy the injury-in-fact requirement of Article III. *See Summers*, 555 U.S., at 496, 129 S. Ct. 1142 ("[D]eprivation of a procedural right without some concrete interest that is affected by the deprivation . . . is insufficient to create Article III standing"); *see also Lujan*, *supra*, at 572, 112 S. Ct. 2130.[60]

Defendants point to *United States v. Miller* for the proposition Plaintiffs lack an injury in fact because there is no constitutional right to privacy in bank records.[61] In *Miller*, the Court affirmed the denial of a motion to suppress a banks' production of the defendant's checks, deposit slips, and financial statements in response to a faulty subpoena because the defendant had no legitimate expectation of privacy in his bank

---

[54] *See Summers v. Earth Island Inst.*, 555 U.S. 488, 497 (2009); *Gladstone, Realtors v. Village of Bellwood*, 441 U.S. 91, 100 (1979) ("In no event . . . may Congress abrogate the Art. III minima").
[55] *Lujan*, 504 U.S. at 560 (internal quotation marks omitted).
[56] *Id.* at n.1.
[57] *Spokeo, Inc.*, 136 S. Ct. at 1548.
[58] *Id.* at 1549.
[59] *See id.*
[60] *Id.*
[61] *United States v. Miller*, 425 U.S. 435, 440-45 (1976).

records under the Fourth Amendment.[62] "The depositor takes the risk in revealing his affairs to another," the Court stated, "that the information will be conveyed by that person to the Government."[63] However, *Miller* concerned a motion to suppress and the reasonable expectation of privacy standard under the Fourth Amendment, and the Supreme Court has made clear that the analysis for standing under the Fourth Amendment—whether the defendant had a personal expectation of privacy in the place searched or thing seized which is reasonable—is different from that of Article III standing.[64] Standing under the Fourth Amendment is much narrower than Article III standing because "Fourth Amendment rights are personal in nature."[65] Ultimately, finding an expectation of privacy under the Fourth Amendment makes a separate Article III inquiry unnecessary because the personal nature of Fourth Amendment rights "already answer[s] many of the[] traditional standing inquiries."[66] The obverse is also true. Finding no expectation of privacy under the Fourth Amendment does not automatically answer the broader question of Article III standing. Under certain circumstances, plaintiffs can have standing to sue for injuries not personal to them—for example, third-party standing.[67] Therefore, a lack of expectation of privacy in bank records under the Fourth Amendment—the narrower question—does not mean there is no Article III standing.

---

[62] *Id.*

[63] *Id.* at 443.

[64] *Minnesota v. Carter*, 525 U.S. 83, 87-88 (1998); *Rakas v. Illinois*, 439 U.S. 128, 139-40 (1978).

[65] *Rakas*, 439 U.S. at 140.

[66] *Id.*

[67] *See, e.g.*, *Kowalski v. Turner*, 543 U.S. 125, 129-30 (2004) ("[A] party 'generally must assert his own legal rights and interests, and cannot rest his claim to relief on the legal rights or interests of third parties.' . . . We have not treated this rule as absolute, however, recognizing that there may be circumstances where it is necessary to grant a third party standing to assert the rights of another." (quoting *Warth v. Seldin*, 422 U.S. 490, 499 (1975)). Those plaintiffs alleging third party standing must of course assert some injury as well. *Id.* at 129 & n.2. The point is that not all claims must be strictly personal to the plaintiffs.

Instead, the Supreme Court's analysis in *Spokeo, Inc. v. Robbins* remains instructive on whether an injury-in-fact has occurred for an intangible harm resulting from a statutory violation.[68] "In determining whether an intangible harm constitutes an injury in fact, both history and the judgment of Congress play important roles."[69]

In this case, Plaintiffs allege that Defendants violated the Privacy Act, 5 U.S.C. 552a, in disclosing their bank records to the DA, causing Plaintiffs to suffer an invasion of privacy. They allege that the disclosure of this information to the DA caused it to be filed on a public forum—*i.e.*, the court record—exposing Plaintiffs to the risk of identity theft.[70] Following the analysis in *Spokeo*, invasion of privacy has long been recognized as a tort.[71] Moreover, Congress has acted to create privacy interests in personal records transmitted to agencies covered by the Privacy Act and an accompanying cause of action for its violation.[72] Considering this history and the judgment of Congress, this Court finds that the alleged invasion of privacy into bank records, exposing the Plaintiffs to the risk of identity theft, is a concrete harm that meets the injury-in-fact requirements.

Plaintiffs also allege violations of 42 U.S.C. §§ 1983, 1985, 1986 for conspiring to violate their Fourth, Fifth, Sixth, Eighth, and Fourteenth Amendment rights, to deny them equal protection under the law, or to prevent a conspiracy to do so. Plaintiffs allege that Defendants did not notify them or give them an opportunity to be heard before making criminal allegations against Plaintiffs in Defendants' internal investigation, which

---

[68] *Spokeo, Inc.*, 136 S. Ct. at 1545-50.

[69] *Id.* at 1549.

[70] Plaintiffs allege this private information contained their social security cards, full credit and consumer data reports, driver's licenses, job history, residence history, and income statements. Defendants do not dispute that this private information was publicly available in the public court record, and there are no allegations that sensitive information was redacted or otherwise protected to prevent an injury.

[71] *See, e.g.*, Restatement (Second) of Torts § 652A (Am. L. Inst. 1977); Eli A. Meltz, *"Attempted" Invasion of Privacy and the Tort of Intrusion Upon Seclusion*, 83 Fordham L. Rev. 3431, 3440-41 (2015) (listing cases for each state that recognizes invasion of privacy).

[72] 5 U.S.C. 552a(b), (g).

was ultimately turned over to the DA, or before Defendants complied with the DA's subpoena. Moreover, Plaintiffs allege that the Union did not properly train Sanders, Rodgers, or Kish and so failed to prevent the conspiracy to deny Plaintiffs their constitutional rights. These violations, Plaintiff allege, exposed them to the risk of identity theft, resulted in a loss of wages, damaged their reputation, and so traumatized Plaintiffs that they must now pay for psychological services.

As the Supreme Court has stated, "[i]f a defendant has caused physical or monetary injury to the plaintiff, the plaintiff has suffered a concrete injury in fact under Article III."[73] Moreover, "reputational harm" is an intangible "harm[] traditionally recognized as providing a basis for lawsuits in American Courts."[74] Finally, "traditional harms may also include harms specified by the Constitution itself."[75] Considering Plaintiffs' allegation of monetary damages; reputation damages; and the risk of identity theft stemming from alleged violations of their constitutional rights, the Court finds that there are concrete harms that meet the injury-in-fact requirements.

Defendants, citing 15 U.S.C. § 6802 and Louisiana Revised Statute § 6:333, argue both Congress and the Louisiana Legislature have allowed banks to disclose consumer information in response to subpoenas by excepting those disclosures from the general prohibition on disclosing such information, which prevents Plaintiffs from having alleging an injury in fact.[76] However, assuming these statutes apply, pointing to the

---

[73] *TransUnion LLC v. Ramirez*, 141 S. Ct. 2190, 2204 (2021).

[74] *Id.*

[75] *Id.*

[76] 15 U.S.C. § 6802 provides in relevant part:
(a) Notice requirements
Except as otherwise provided in this subchapter, a financial institution may not, directly or through any affiliate, disclose to a nonaffiliated third party any nonpublic personal information, unless such financial institution provides or has provided to the consumer a notice that complies with section 6803 of this title.
. . . .

13

statutory exceptions to the prohibition on banks' disclosure of consumer information confuses standing with the substantive question of whether Plaintiffs have stated a valid claim. "[S]tanding in no way depends on the merits of the plaintiff's contention that particular conduct is illegal . . . ."[77] The question for injury in fact is whether there has been a valid harm, not whether there is a valid cause of action. The Supreme Court has recently reiterated "an important difference exists between (i) a plaintiff's statutory *cause of action* to sue a defendant over the defendant's violation of federal law, and (ii) a

---

(e) General exceptions
Subsections (a) and (b) shall not prohibit the disclosure of nonpublic personal information –

. . . .

(8) . . . to comply with Federal, State, or local laws, rules, and other applicable legal requirements; to comply with a properly authorized civil, criminal, or regulatory investigation or subpoena or summons by Federal, State, or local authorities; or to respond to judicial process or government regulatory authorities having jurisdiction over the financial institution for examination, compliance, or other purposes as authorized by law.

La. Rev. Stat. § 6:333 provides in relevant part:

B. . . . [N]o bank or its affiliate shall disclose any financial records to any person other than the customer to whom the financial records pertain, unless such financial records are disclosed [in accordance with this Section.]

. . . .

(F) The following disclosures by a bank or any affiliate are hereby specifically authorized and, except as otherwise provided in this Subsection, nothing in this Section shall prohibit, restrict, or otherwise apply to:

. . . .

(6) The disclosure by a bank or any affiliate of financial records to a government authority or law enforcement agency or department in connection with a known or suspected criminal act against the bank or involving a bank officer or employee.

. . . .

(11) The disclosure by a bank or any affiliate of financial records in situations governed by, pursuant to, and in accordance with the provisions of . . . 15 U.S.C. 6801 et seq. or pursuant to a search warrant issued in accordance with Title IV of the Code of Criminal Procedure.

. . . .

(13) The disclosure by a bank or any affiliate of financial records pursuant to a subpoena or court order issued in connection with proceedings before a federal or state grand jury in accordance with applicable federal or state law, rule, or regulation, or subpoena or court order issued in connection with a state criminal investigation pursuant to Code of Criminal Procedure Article 66.

[77] *Warth v. Seldin*, 422 U.S. 490, 500 (1975); *see also Planned parenthood of Gulf Coast, Inc. v. Gee*, 862 F.3d 445, 455 (5th Cir. 2017) ("[Defendant's] contention turns on the sole substantive question before us on appeal, and we decline to allow [the defendant] to bootstrap this issue into our standing inquiry."), *overruled on other grounds*, *Planned Parenthood of Greater Tex. Family Planning & Preventative Health Servs., Inc. v. Kauffman*, 981 F.3d 347, 368 (5th Cir. 2020); *In re Special Grand Jury 89-2*, 450 F.3d 1159, 1172 (10th Cir. 2006) ("The term *legally protected interest* has generated some confusion because the Court has made clear that a plaintiff can have standing despite losing on the merits—that is, even though the interest would not be protected by the law in that case.").

plaintiff 's suffering *concrete harm* because of the defendant's violation of federal law."[78] Plaintiffs have alleged that Defendants invaded the privacy of their banking records by disclosing these records to the DA without permission, after which these records were publicly available, exposing Plaintiffs to the possibility of identity theft. Moreover, Plaintiffs allege monetary and reputational damages. This alleged harm is sufficiently concrete and particularized to constitute an injury in fact.

### 2.    Failure to State a Claim

#### a.    Privacy Act

The Privacy Act provides, subject to certain exception, "No agency shall disclose any record which is contained in a system of records by any means of communication to any person, or to another agency, except pursuant to a written request by, or with the prior written consent of, the individual to whom the record pertains."[79] An agency "means agency as defined in section 552(e) of this title."[80] The relevant definition in Section 552 defines agency as "includ[ing] any executive department, military department, Government corporation, Government controlled corporation, or other establishment in the executive branch of the Government (including the Executive Office of the President), or any independent regulatory agency."[81] In this case, Defendants are not agencies within the meaning of the Privacy Act because they are a private bank and private bank employees, not federal governmental agencies.[82] For this reason, the Court finds the

---

[78] *TransUnion LLC*, 141 S. Ct. at 2205 (emphasis added).
[79] 5 U.S.C. § 552a(b).
[80] *Id.* § 552a(a)(1).
[81] *Id.* § 552(f)(1). Although Section 552a(a)(1) refers to Section 552(e), the definition of agency is actually found in Section 552(f). Courts have thus looked to subsection (f) for the definition of agency. *See, e.g.*, *Gilbreath v. Guadalupe Hosp. Found. Inc.*, 5 F.3d 785, 791 (5th Cir. 1993).
[82] *See* 5 U.S.C. § 552(f)(1); *Gilbreath*, 5 F.3d at 791 (holding that private hospitals are not agencies as defined in the Privacy Act).

Plaintiff has failed to state a plausible claim for relief under the Privacy Act, and his Privacy Act cause of action must be dismissed with prejudice.[83]

### b.   Section 1983

Plaintiffs arguably attempt to bring a claim against the Union under Section 1983.[84] Plaintiffs allege that the Union failed to properly discipline Sanders, Rodgers, and Kish for conspiring to violate Plaintiffs' Fourth, Fifth, Sixth, Eighth, and Fourteenth Amendment rights and later alleges that all Defendants acted "under the color of law."[85] Giving these *pro se* allegations "a liberal construction," the Court construes Plaintiffs' allegations here against Union as an effort to bring a claim under Section 1983.[86]

Plaintiffs, however, have not sufficiently alleged a Section 1983 claim against Sanders, Rodgers, and Kish. While the Court "applies less stringent standards to parties proceeding pro se than to parties represented by counsel and liberally construes the briefs of pro se litigants, a pro se [litigant] still must actually argue something that is susceptible of liberal construction."[87] Plaintiffs make no reference to Sanders, Rodgers, and Kish in any of the four times, one of which is merely the caption of the third amended complaint,

---

[83] To the extent Plaintiffs also assert a claim against Sanders (or any of the other Defendants) under the Fair Credit Reporting Act, 15 U.S.C. § 1681 *et seq.*, the Plaintiffs also fail to state a claim because the Defendants are not "consumer reporting agencies" under 15 U.S.C. § 1681a(f). A "consumer reporting agency" is defined as "any person which . . . assembl[es] or evaluat[es] consumer credit information . . . for the purpose of furnishing consumer reports to third parties." *Id.* The term "consumer report," in turn, is defined not to include "any report containing information solely as to transactions or experiences between the consumer and the person making the report." *Id.* § 1681a(d)(2)(A)(i). Defendants' internal investigations into Plaintiffs' loans with Defendants and any subsequent disclosure relate solely to Defendants' personal experiences with the Plaintiffs and fall under this transaction and experiences exception. *See Hodge v. Texaco, Inc.*, 975 F.2d 1093, 1096 (5th Cir. 1992); *Dawson v. Bank of Am., N.A.*, 605 F. App'x 263, 266 (5th Cir. 2015).
[84] R. Doc. 57 at ¶¶ 93, 96.
[85] *Id.*
[86] *Brown*, 675 F.3d at 477.
[87] Toole v. Peak, 361 F. App'x 621, (5th Cir. 2010) (citing Grant v. Cuellar, 59 F.3d 523, 524 (5th Cir. 1995)); *see also Williams v. Noel*, No. 18-9296, 2019 WL 277271 (E.D. La. Jan. 22, 2019).

they mention Section 1983.[88] A plaintiff must allege facts that "establish each individual [d]efendant's liability for the misconduct alleged."[89] Simply including "Section 1983" in the caption of the complaint without later specifying how each defendant allegedly violated Section 1983 is insufficient to put defendants on notice of the claims against them.[90]

Section 1983 "provides a remedy for deprivations of rights secured by the Constitution and laws of the United States when that deprivation takes place 'under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory.'"[91] Thus, to state a claim under Section 1983, a plaintiff must allege that the person or entity depriving him of a federal right was a state actor and was acting under the color of law.[92] When a plaintiff asserts a Section 1983 claim "against any private defendant, . . . the conduct of the private defendant that forms the basis of the claimed constitutional deprivation must constitute state action under color of law."[93]  To succeed, a plaintiff must "allege facts that suggest: 1) an agreement between the private and public defendants to commit an illegal act, and 2) an actual deprivation of constitutional rights."[94]

In *Cinel v Connick*, the Fifth Circuit held there was no evidence of an agreement to commit an illegal act when a subpoena duces tecum for private sexually oriented material was issued at the request of a private party in a civil lawsuit to the state, who held the

---

[88] *See* R. Doc. 57, at caption, 1, 10, ¶¶ 93, 96.

[89] *Cf. Galicki*, 2015 WL 3970297, at *2; *see also Iqbal*, 556 U.S. at 676 (finding that a plaintiff must plead that each Government-official defendant, through the official's own individual actions, has violated the Constitution).

[90] *See Galicki*, 2015 WL 3970297, at *2; *Iqbal*, 556 U.S. at 676.

[91] *Lugar v. Edmondson oil Co., Inc.*, 457 U.S. 922, 924 (1982) (quoting 42 U.S.C. § 1983).

[92] *See, e.g., James v. Tex. Collin Cnty.*, 535 F.3d 365, 373 (5th Cir. 2008); *Cinel v. Connick*, 15 F.3d 1338, 1342 (5th Cir. 1994).

[93] *Morris v. Dillard Dep't Stores, Inc.*, , 747 (5th Cir. 2001) (citing *Lugar*, 457 U.S. at 924).

[94] *Cinel*, 15 F.3d at 1343 (citations omitted) (first citing *Arsenaux v. Roberts*, 726 F.2d 1022, 1024 (5th Cir.1982); and then citing *Villanueva v. McInnis*, 723 F.2d 414, 418 (5th Cir.1984)).

material from a previous investigation.[95] Moreover, a release of some of these materials even before the subpoena was issued did not rise to the level of an agreement.[96] These materials were released without notice to the plaintiff and were later publicly published more than a year later.[97] The court stated the plaintiff "failed to aver facts that suggest[ed] an agreement between the state actors and the private actors to publish the materials released pursuant to the subpoena," and there was no evidence that the responding party's "intention in releasing the information to [the requesting party] was to make it available for future publication."[98] Moreover, the fact that some documents were handed over even before there was a valid subpoena, even if it was improper, was "insufficient by itself to rise to the level of a conspiracy."[99]

Even if there was state action, the court stated that there was no violation of a federal right. The production of the plaintiff's private documents was "irrelevant to the issuance of a valid subpoena duces tecum; a subpoena may order a person to produce documents in his or her possession."[100] The court also found "no legal authority . . . that creates an affirmative duty of a non-party . . . in possession of documents to notify the owner of the subpoenaed documents."[101]

In this case, as in *Cinel*, Plaintiffs do not present allegations to suggest an agreement between the Union and the Louisiana state actors. Plaintiffs' conclusory allegations stating that there was a conspiracy do not "suggest an agreement between the state actors and the private actors to publish the materials released pursuant to the

---

[95] *Id.* at 1344.
[96] *Id.* at 1333-44.
[97] *Id.*
[98] *Id.* at 1344.
[99] *Id.*
[100] *See id.* at 1343.
[101] *Id.*

subpoena."[102] Nothing in Plaintiffs' complaint establishes it was the Union's intention in allowing its employees to release Plaintiffs' records to have them published in a public forum or deprive Plaintiffs of their rights. The allegations only establish that the Union released the records to assist in an ongoing criminal investigation. Even when the Union released records on their own initiative before the subpoena was issued, this disclosure alone is insufficient to rise to the level of a conspiracy. Plaintiffs do not allege that the Louisiana state actors asked for this information at that point, so there was no agreement between them and Union. For these reasons, the Court finds no agreement between Union and the Louisiana state actors to deprive Plaintiffs of their rights.

Even if there was an agreement, the Court finds that there was no violation of a federal right. As in *Cinel*, an interest in subpoenaed documents is irrelevant; "a subpoena may order a person to produce documents in his or her possession."[103] Moreover, there is no duty for a non-party to notify people with an interest in subpoenaed documents.[104] For these reasons, Plaintiffs failed to state a valid claim under Section 1983 against the Union, and the cause of action must be dismissed with prejudice.

### c.      Section 1985

Section 1985 provides for three separate causes of action. Section 1985(1) prohibits the interference with a federal officer in the performance of his or her duties, and Section 1985(2) protects parties and witnesses who seek to attend or testify in federal court.[105] Plaintiffs assert claims under Sections 1985(2) and 1985(3).

---

[102] *Id.* at 1344.
[103] *See id.* at 1343.
[104] *Id.*; *see also Miller*, 425 U.S. at 440-45; 15 U.S.C. § 6802(e)(8); La. Rev. Stat. § 6:333(13).
[105] *See, e.g., Kush v. Rutledge*, 460 U.S. 719, 724 (1983); *Kimble v. D.J. McDuffy, Inc.*, 648 F.2d 340 (5th Cir. 1981); *Bryant v. Miss. Military Dep't*, 519 F. Supp. 2d 622, 628–29 (S.D. Miss. 2007); *Turner v. Bowen*, No. 3:06-cv-576-DPJ-JCS, 2007 WL 1295787, at *2 (S.D. Miss. May 1, 2007); *Ragsdale v. Classroom*

The first portion of Section 1985(2) concerns federal judicial proceedings.[106] The second part of Section 1985(2), however, applies to conspiracies to obstruct the course of justice in state courts.[107] The Court construes Plaintiffs' allegations as invoking the second part of Section 1985(2). The second part of Section 1985(2) "describe[s] conspiracies designed to interfere with the equal protection of the laws."[108] The language requiring intent to deprive one of equal protection of the laws means that there must be some racial or otherwise class-based discriminatory animus behind the conspirators' actions.[109] Plaintiffs fail to allege racial or otherwise class-based discriminatory animus. Accordingly, the Court finds that Plaintiffs fail to state a claim under Section 1985(2).

"Section 1985(3) prohibits private conspiracies to deprive persons of equal protection of the laws."[110] To state a claim for relief under Section 1985(3), a plaintiff must show, *inter alia*, "that some racial, or perhaps otherwise class-based, invidiously discriminatory animus [lay] behind the conspirators' action."[111] Stated differently, to state a claim under Section 1985(3), the plaintiff must allege sufficient facts showing the defendants conspired to discriminate against the plaintiff on the basis of his or her race or class.[112] Plaintiffs have not alleged, however, that the Defendants conspired to

---

*Teachers of Dallas*, No. 3:06-CV-863-H (BH), 3:06-CV-870-D, 2007 WL 426637, at *4 n.5 (N.D. Tex. Feb. 5, 2007).
[106] *Kush v. Rutledge*, 460 U.S. 719, 724
[107] *Id.* at 725.
[108] *Bradt v. Smith*, 634 F.2d 796, 801 (5th Cir. 1981).
[109] *Griffin v. Breckenridge*, 403 U.S. 88, 91 (1971); *Bradt*, 634 F.2d at 801.
[110] *Daigle v. Gulf State Utilities Co., Local Union Number 2286*, 794 F.2d 974, 978 (5th Cir. 1986) (citation omitted).
[111] *Bray v. Alexandria Women's Health Clinic*, 506 U.S. 263, 267–68 (1993) (internal quotations omitted) (quoting *Griffin v. Breckenridge*, 403 U.S. 825, 833 (1983)). *See also David v. Signal Intern., LLC*, No. 08-1220, 2012 WL 10759668, at *36 (E.D. La. Jan. 4, 2012).
[112] *See, e.g., Newsome v. EEOC*, 301 F.3d 227, 232 (5th Cir. 2002).

discriminate against him on the basis of his race or other class. Plaintiffs' cause of action under Section 1985 must be dismissed with prejudice.[113]

### d.    Section 1986

Section 1986 provides for liability against third parties based on their knowledge of Section 1985 violations. Section 1986 does not provide an independent cause of action but instead requires the existence of a valid claim under Section 1985.[114] "A valid § 1985 claim is a prerequisite to a § 1986 claim."[115] Because the Plaintiffs have failed to state a plausible claim for relief under Section 1985, Plaintiffs' cause of action under Section 1986 is not cognizable. Therefore, Plaintiffs' cause of action under Section 1986 must be dismissed with prejudice.

### e.    Violations of the Fourth, Fifth, Sixth, and Fourteenth Amendments

Reading Plaintiffs' third amended complaint liberally,[116] Plaintiffs arguably ask this court to issue a declaratory judgment that the Union violated their Fourth, Fifth, Sixth, and Fourteenth Amendment rights to privacy, due process, and fair notice under the United States Constitution.[117]

"It is well-settled that the protection provided by the Fourth Amendment proscribes only governmental action, and that private party searches of property, even if wrongfully conducted, do not raise Fourth Amendment implications."[118] To determine if private actor has become a state actor for purposes of the Fourth Amendment the courts

---

[113] To the extent Plaintiffs request a declaratory judgment that Defendants violated Section 1985, that claim is dismissed for the same reasons.

[114] *Bradt*, 634 F.2d at 799 n.3.

[115] *Bryan v. City of Madison, Miss.*, 213 F.3d 267, 276 (5th Cir. 2000).

[116] *Brown*, 675 F.3d at 477.

[117] R Doc. 57 at ¶ 112.

[118] *United States v. Paige*, 136 F.3d 1012, 1017 (5th Cir. 1998) (citing *United States v. Blocker*, 104 F.3d 720, 725 (5th Cir. 1997)).

must evaluate a two-factor test: "(1) whether the government knew or acquiesced in the intrusive conduct; and (2) whether the private party intended to assist law enforcement efforts or to further his own ends."[119] In this case, even if there was a Fourth Amendment violation, the Union was not a state actor for the same reasons described above relating to Plaintiffs' Section 1983 claim. Union acted on its own initiative to investigate Plaintiffs and turn that information over to the Louisiana authorities. Moreover, once a valid subpoena was issued, turning over Plaintiffs' information could not be an invasion of privacy.

The Fourteenth Amendment applies only to state actors,[120] and the Fifth Amendment only to federal actors.[121] Plaintiffs do not allege there was any federal involvement, so their Fifth Amendment claim must fail. The question of whether someone is bound by the Fourteenth Amendment is the "same question" posed "in determining whether a person is subject to suit under § 1983."[122] For the same reasons described above relating to Plaintiffs' Section 1983 claim, Plaintiffs' claim under the Fourteenth Amendment must fail.

The Sixth Amendment provides that "[i]n all criminal prosecutions, the accused shall enjoy the right . . . to be informed of the nature and cause of the accusation."[123] This right "guarantees every defendant the right to be informed of the *government's* accusation against him."[124] The Union is a private entity, not the government, and

---

[119] *United States v. Paige*, 136 F.3d 1012, 1018 (5th Cir. 1998).

[120] *See Williams v. Bramer*, 180 F.3d 699, 705 (5th Cir. 1999); *Landry v. A-Able Bonding, Inc.*, 75 F.3d 200, 203 (5th Cir. 1996); *Doe v. Rains Cnty. Indep. Sch. Dist.*, 66 F.3d 1402, 1406 (5th Cir. 1995).

[121] *Richard v. Hinson*, 70 F.3d 415, 416–17 (5th Cir. 1995); *Blackburn v. City of Marshall*, 42 F.3d 925, 930 n.3 (5th Cir. 1995).

[122] *Rendell-Baker v. Kohn*, 457 U.S. 830, 838 (1982).

[123] U.S. Const. amend. VI.

[124] *United States v. Ramos*, 66 F.2d 469, 474 (11th Cir. 1982) (emphasis added); *see also United States v. Sanchez*, 508 F.2d 388, 395 (5th Cir. 1975) (noting the Sixth Amendment's notice requirements are relevant to the *government's* acts and charging documents).

Plaintiffs have not alleged that the Union is responsible for the bill of information filed against Lightfoot or its contents. For these reasons, Plaintiffs' claims against the Union under the Fourth, Fifth, Sixth, and Fourteenth Amendments must be dismissed with prejudice.

### D.    Plaintiffs' State Law Claims Are Dismissed Without Prejudice

Plaintiffs also assert various state law claims against Defendants. Having dismissed each of Plaintiffs' federal claims, the Court declines to exercise supplemental jurisdiction over Plaintiffs' state law claims. District courts have discretion not to exercise supplemental jurisdiction over a claim when all claims over which the court had original jurisdiction have been dismissed.[125] Although the "'general rule' is to decline to exercise jurisdiction over pendent state-law claims" under such circumstances, the "rule is neither mandatory nor absolute."[126] Rather, a court must consider "both the statutory provisions of 28 U.S.C. § 1367(c) and the balance of the relevant factors of judicial economy, convenience, fairness, and comity."[127] Having considered the applicable law, the complexity of Plaintiffs' remaining state law claims, and the fact that the trial of this matter has not yet been set, the Court declines to exercise supplemental jurisdiction over these claims and dismisses Plaintiff's remaining state law claims without prejudice.[128]

---

[125] 42 U.S.C. § 1367(c)(3). 42 U.S.C. § 1367(c) reads:

> The district courts may decline to exercise supplemental jurisdiction over a claim under subsection (a) if: (1) the claim raises a novel or complex issue of State law, (2) the claim substantially predominates over the claim or claims over which the district court has original jurisdiction, (3) the district court has dismissed all claims over which it has original jurisdiction, or (4) in exceptional circumstances, there are other compelling reasons for declining jurisdiction.

[126] *Batiste v. Island Records Inc.*, 179 F.3d 217, 227 (5th Cir. 1999) (quoting *McClelland v. Gronwaldt*, 155 F.3d 507, 519 (5th Cir. 1998)).

[127] *Id.* (citations omitted).

[128] *See Carnegie-Mellon Univ. v. Cohill*, 484 U.S. 343, 350 n.7 (1988) (stating that "in the usual case in which all federal-law claims are eliminated before trial, the balance of factors to be considered under the pendent jurisdiction doctrine . . . will point toward declining to exercise jurisdiction over the remaining state-law claims"); *Batiste v. Island Records, Inc.*, 179 F.3d 217, 227 (5th Cir. 1999) (reversing the district court for declining to retain supplemental jurisdiction over the state law claims that remained following the district court's grant of summary judgment on all of the plaintiff's federal claims because "the remaining

## IV.   Conclusion

For the foregoing reasons,

**IT IS ORDERED** that Defendants', the Greater New Orleans Federal Credit Union, Heather Rodgers, Shelly Sanders, and Gerry Kish, Motion to Dismiss[129] is **GRANTED**.

**IT IS FURTHER ORDERED** that Plaintiffs' claims against "all Defendants" are **DISMISSED WITHOUT PREJUDICE**  as the claims are impermissibly vague.

**IT IS FURTHER ORDERED** that Plaintiffs' lack standing to bring criminal charges under Louisiana statutes against the Greater New Orleans Federal Credit Union, Heather Rodgers, Shelly Sanders, and Gerry Kish and these claims are **DISMISSED WITHOUT PREJUDICE FOR LACK OF STANDING**.

**IT IS FURTHER ORDERED** that Plaintiffs' federal law claims against the Greater New Orleans Federal Credit Union, Heather Rodgers, Shelly Sanders, and Gerry Kish are **DISMISSED WITH PREJUDICE**.

**IT IS FURTHER ORDERED** that Plaintiffs' state law claims against Defendants the Greater New Orleans Federal Credit Union, Heather Rodgers, Shelly Sanders, and Gerry Kish are **DISMISSED WITHOUT PREJUDICE** as the Court declines to exercise its supplemental jurisdiction over these claims.

**New Orleans, Louisiana, this 16th day of March, 2023.**

**SUSIE MORGAN**
**UNITED STATES DISTRICT JUDGE**

---

[state law] claims d[id] not involve any 'novel or complex' issues of state law," and "[t]he case had been pending in the district court for almost three years"). The Court dismisses without prejudice all of Plaintiffs' remaining state law claims against each Defendant in this case.

[129] R. Doc. 88.

**<u>Clerk to Notify via Mail</u>:**

Geralyn Hawkins
500 South Starrett Road
New Orleans, LA 70123

Chad Lightfoot #301162
Orleans Parish Justice Center
I.D. #2516543
300 Perdido Street
New Orleans, LA 70119

Nicole Thompson
P.O. Box 1472
Kenner, LA 70063

**<u>Clerk to Notify via E-Mail:</u>**

Geralyn Hawkins
geralynhawkins@yahoo.com